HOBRLA v GLASS

HOBRLA v DEPARTMENT OF STATE

Docket Nos. 77129, 77437. Submitted March 13, 1985, at Lansing.—
Decided June 18, 1985.

Plaintiff, Marilyn Hobrla, was seriously injured on October 25,
1981, when the car in which she was a passenger was struck by
a car driven by Dennis Barker. The facts indicate that Barker
was convicted in 1979 of negligent homicide and felonious
driving. The circuit court in that case sentenced Barker to four
years' probation and prohibited him from driving for two years,
until December 3, 1981. The circuit court clerk sent the Secre-
tary of State an "Abstract Report of Court Order and Record of
Conviction" indicating that, under the judgment of conviction
and order of probation, Barker was not to drive for two years.
On May 20, 1980, an employee of the Secretary of State placed
Barker's December 3, 1979, conviction into his driver's license
record, but noted only a one-year suspension. This record with

REFERENCES FOR POINTS IN HEADNOTES

[1] 7A Am Jur 2d, Automobiles and Highway Traffic § 96 et seq.
  State's liability for improperly licensing negligent driver. 79 ALR3d
  955.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27 et
  seq.
  Modern status of rule excusing governmental unit from tort liabil-
    ity on theory that only general, not particular, duty was owed
    under circumstances. 38 ALR4th 1194.
[3] 57 Am Jur 2d, Negligence § 192 et seq.
[4] 51 Am Jur 2d, Licenses and Permits § 143.
  "Willfulness" and "public health, interest, or safety" exceptions to
    notice and opportunity for compliance provisions of Administra-
    tive Procedure Act (15 USCS § 558(c)) dealing with withdrawal,
    suspension, revocation, or annulment of license. 46 ALR Fed 560.
[5] 73 Am Jur 2d, Statutes § 375.
[6] 74 Am Jur 2d, Torts § 17 et seq.
  Modern status of intentional infliction of mental distress as inde-
    pendent tort; "outrage." 38 ALR4th 998.
[8] 39 Am Jur 2d, Highways, Streets, and Bridges § 337 et seq.
  Liability, in motor vehicle related cases, of governmental entity for
    injury or death resulting from defect or obstruction on roadside
    parkway or parking strip. 98 ALR3d 439.

the one-year notation was transferred to another employee, Kimberly Jo Glass, who on June 2, 1980, prepared an "Order of Suspension" which also reflected a one-year suspension. At the expiration of the one-year period, another employee authorized a driver's license examination for the restoration of Barker's license. On December 4, 1980, Barker appeared and was granted an unrestricted operator's license although under the terms of his probation he was prohibited from driving for another year. On December 17, 1980, the circuit court amended its order of probation to allow Barker to drive to and from work. Plaintiff was injured on October 25, 1981. At the time of the accident, Barker is alleged not to have been driving to or from work but, rather, was coming from a tavern where he had drunk to excess. Plaintiff then brought an action in the Ingham Circuit Court against Kimberly Jo Glass and numerous other employees of the Secretary of State. Plaintiff also brought an action in the Court of Claims against the Michigan Department of State and the Secretary of State. Each action sought to establish the defendants' liability for the plaintiff's damages which were alleged to arise out of the reinstatement of Barker's suspended driver's license. The defendants in both actions sought summary judgment based upon failure to state a claim upon which relief can be granted. The Ingham Circuit Court granted defendants' motion for summary judgment, Robert Holmes Bell, J., and plaintiff appeals therefrom. The Court of Claims also granted defendants' motion for summary judgment, Carolyn Stell, J., and plaintiff appeals therefrom. The appeals were consolidated by the Court of Appeals. *Held:*

1. The State of Michigan, the Department of State, the Secretary of State and his employees are not liable for automobile injuries caused by drivers who were negligently issued a driver's license by the Department of State.

2. Both trial courts correctly determined that plaintiff's claims are so clearly unenforceable as a matter of law that no factual development could possibly furnish a basis for recovery. Summary judgment was proper in both actions.

3. On the claim of negligence: a) The Department of State is immune from suit for the alleged negligent issuance of a license to Barker. The department's immunity extends to allegations of vicarious liability, since the individual defendants, even if they acted negligently, were also engaged in the exercise or discharge of a governmental function at the time that the tort was committed. b) None of the individual defendants may be held liable because their duty is to the public rather than to particular individuals and their issuance of a license to

Barker was not a proximate cause of the accident, as a matter of law.

4. On the claim of intentional disregard of court order and duty: a) Defendants' actions could not have caused the accident. b) The trial courts correctly determined that the transmittal of the "Abstract Report of Court Order and Record of Conviction" does not constitute a court order directed to the department. The department's duty to conform to the circuit court's probation order (directed to the driver) arises from statute, not directly from the order itself. There was no violation of a court order, but, rather, a violation of the statute which requires conformity to the terms of probation transmitted by the sentencing court to the department. The statutory duty is one owed to the general public, not to any individual citizen. c) Defendants' failure to suspend Barker's license for a full two years was an omission, not a traditional intentional tort. d) The department's policy, providing that the terms of probation not be followed by the department unless the circuit court specifically states that it recommends suspension to the department, violates MCL 752.192, not the court order. Whoever in the department decided to promulgate the erroneous policy exercised judgment and made a discretionary decision thereby coming within the protection of governmental immunity.

5. Plaintiff has failed to state a nuisance claim.

6. The statutory exception to governmental immunity pertaining to highways, MCL 691.1402, does not apply to these actions.

Affirmed.

1. GOVERNMENTAL IMMUNITY — DRIVER'S LICENSES — NEGLIGENT ISSUANCE OF LICENSES — GOVERNMENTAL FUNCTIONS.

The State of Michigan, the Department of State, and the Secretary of State and his employees are not liable for automobile injuries caused by a driver who was negligently issued a driver's license by the Department of State; the issuance of a driver's license is a governmental function entitled to governmental immunity (MCL 257.202, 691.1407; MSA 9.1902, 3.996[107]).

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES.

Employees of governmental agencies are immune from tort liability resulting from their acts where they acted during the course of their employment, in the scope of their authority, in

good faith, and if they performed discretionary rather than ministerial acts.

3. Negligence — Proximate Cause — Intervening Causes.

The proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred; whether an intervening act of negligence, or even a criminal one, constitutes a superseding cause is a jury question, provided that the prior negligence is still operating.

4. Licenses — Drivers' Licenses — Suspension — Probation — Public Duties.

The statutory duty of the Department of State to suspend the operator's or chauffeur's license of a person in conformity with the terms of probation transmitted by a sentencing court to the department is a duty owed to the general public, not to any individual citizen (MCL 752.192; MSA 28.662).

5. Torts — Statutes — Governmental Agencies — Failure to Enforce Statutes.

A governmental agency may not be held liable for even an intentional failure to enforce a statute in the absence of a statute authorizing the imposition of liability.

6. Torts — Acts of Omission — Intentional Torts.

An act of omission is not an intentional tort.

7. Nuisance — Conditions.

A nuisance is a condition and not an act or failure to act.

8. Governmental Immunity — Highways.

The highway exception to governmental immunity deals with injuries resulting from the condition of the highway itself, not the condition of travelers thereon (MCL 691.1402; MSA 3.996[102]).

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *John P. Jacobs* and *Robert G. Kamenec*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Arthur E. D'Hondt,* Assistant Attorney General, for defendants.

Before: SHEPHERD, P.J., and V. J. BRENNAN and C. JOBES,* JJ.

SHEPHERD, P.J. Plaintiff was seriously injured on October 25, 1981, when the car in which she was a passenger was struck by a car driven by Dennis Barker. The instant consolidated cases involve the liability, if any, of the State of Michigan and certain of its individual employees arising out of the reinstatement of Barker's suspended driver's license. In Docket No. 77437, the Court of Claims granted the defendants' motion for summary judgment for failure to state a claim upon which relief can be granted. GCR 1963, 117.2(1). In Docket No. 77129, the circuit court likewise entered an order granting the individual defendants' motion for summary judgment. *Id.* Plaintiff appeals as of right. We affirm and hold that under existing law the State of Michigan, the Department of State, the Secretary of State and his employees are not liable for automobile injuries caused by drivers who were negligently issued a driver's license by the Department of State.

We will review the pertinent allegations in plaintiff's complaints. Mr. Barker has a long history of traffic offenses. His driver's license had been suspended for alcohol-related offenses at least once prior to the October 25, 1981, accident. Of particular importance to these cases is an accident which resulted in Barker's 1979 conviction for negligent homicide and felonious driving. In that case, the circuit court sentenced Barker to four years' probation and prohibited him from driving for two years, until December 3, 1981. The court clerk sent to the Secretary of State an "Abstract Report of Court Order and Record of Conviction".

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

These documents indicated that, under the judgment of conviction and order of probation, Barker was not to drive for two years.

On May 20, 1980, an unknown employee of the Secretary of State placed Barker's December 3, 1979, conviction onto his driver's license record, but noted only a "one year suspension". This record, with the "one year" notation (as opposed to the two-year condition imposed by the circuit court), was then transferred to defendant Glass, who on June 2, 1980, prepared an "Order of Suspension" which also reflected a one-year suspension.

At the expiration of the one-year period listed on the Secretary of State's records, either defendant Brewington or defendant unknown agent "AY" authorized a driver's license examination for the restoration of Barker's license. On December 4, 1980, Barker appeared before defendant Ferreber and was granted an unrestricted operator's license, although under the terms of his probation he was prohibited from driving for another year.

On December 17, 1980, the circuit court amended its order of probation to allow Barker to drive to and from work. The complaints are silent as to whether or not the Secretary of State's office was informed of this amendment. Plaintiff admits that at the time of the accident Barker was not driving to or form work, "but was coming from a tavern where he had drunk to excess".

Each complaint alleged that the defendants were liable for intentional disregard of a court order, namely, the circuit court's probation order suspending Barker's license for two years. Count II contained a claim of intentional nuisance. Count III was for negligence. Plaintiff alleged that defendants had a duty to act with due care in licensing drivers and that this duty was breached by negli-

gently disregarding the December, 1979, probation order, negligently disregarding the amended probation order, and negligently issuing a driver's license to Barker despite his driving record.

In Count IV, plaintiff alleged that defendants were liable under MCL 691.1402; MSA 3.996(102), which allows suits against certain agencies for failure to keep highways in reasonable repair and in a condition reasonably safe and fit for travel. Plaintiff alleged that defendants, by licensing Barker, negligently failed to keep the streets and highways of Michigan reasonably safe and fit for travel and that this negligence was a proximate cause of plaintiff's injuries.

In Count V, plaintiff claimed that defendants had intentionally disregarded their statutory duties, citing MCL 752.192; MSA 28.662 and MCL 257.309; MSA 9.2009. MCL 752.192 requires the department to comply with a recommendation of a circuit court to suspend the license of a person convicted of felonious driving. MCL 257.309 concerns the examination of applicants for driver's licenses. Plaintiff alleged that defendants intentionally violated these duties by refusing to follow the probation order, preparing an incorrect suspension order, relicensing Barker and failing to restrict his license according to the terms of the amended probation order.

In granting the individual defendants' motion for summary judgment, the circuit court ruled that: (1) defendants' actions "cannot be construed to be a proximate cause of the injuries to the plaintiff as a matter of law", (2) "the defendants' duty, if it can be construed as a duty, is a governmental one and is a public duty owed to the public at large * * * [It cannot] be said that these defendants owed this plaintiff a legally cognizable duty", (3) the accident's remoteness made it "im-

possible to logically and consistently conclude that * * * the issue of licensure gives rise to liability in the accident", and (4) MCL 691.1402 was inapplicable to the individual defendants because they were not a governmental agency with jurisdiction over the highway where the accident occurred.

The judge of the Court of Claims found that plaintiff's claims against the Department of State were barred under principles of governmental immunity. In the alternative, she held that: (1) the department did not intentionally disregard a court order as alleged in the complaint, since the judgment of conviction and probation orders issued by the circuit court were not binding on the department, (2) MCL 691.1402 is inapplicable to the Secretary of State, (3) the nuisance count was barred under principles of governmental immunity, citing *Disappearing Lakes Ass'n v Dep't of Natural Resources,* 121 Mich App 61; 328 NW2d 570 (1982), *aff'd sub nom Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), and (4) "the issue of proximate cause is entirely too remote for there to be any connection between the actions of the Secretary of State and the injuries caused to this very seriously injured plaintiff".

We agree with the trial courts that plaintiff's claims are so clearly unenforceable as a matter of law that no factual development could possibly furnish a basis for recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323; 343 NW2d 164 (1984). Moreover, we are in full accord not only with the result reached by the circuit court and Court of Claims but with much of their reasoning as well. The bases for our decision do differ in part from those of the judges who granted summary judgment, however. We will specify those differences as we consider each of plaintiff's claims.

NEGLIGENCE

Defendant Department of State is immune from tort liability when "engaged in the exercise or discharge of a governmental function". MCL 691.1407; MSA 3.996(107). In *Ross, supra,* p 620, the Supreme Court held "that a governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law". The Legislature has assigned the task of issuing drivers' licenses to the defendant department. MCL 257.202; MSA 9.1902. Therefore, the Department of State is immune from suit for the alleged negligent issuance of a license to Barker. This Court so held in *Freeman v Secretary of State,* 132 Mich App 186, 188-189; 347 NW2d 20 (1984). The department's immunity extends to allegations of vicarious liability, since the individual defendants, even if they acted negligently, were also "engaged at the time the tort was committed [in] the exercise or discharge of a governmental function". *Ross, supra,* p 625.

Whether governmental immunity, as defined in *Ross,* extends to the individual defendants is a more difficult issue. These defendants are immune if they acted during the course of their employment, in the scope of their authority, in good faith, and if they performed discretionary rather than ministerial acts. *Id.,* pp 633-634. Defendants were each performing functions within the scope of their employment duties and authority when they issued Barker the license. However, we believe it would be improper to apply the remaining factors listed in *Ross,* because by doing so we would be forced to venture beyond the pleadings. *Blake v Consolidated Rail Corp,* 129 Mich App 535, 543; 342 NW2d 599 (1983).

At oral argument, defense counsel referred to a departmental policy which dictates that the license of a convicted felon, such as Barker, be suspended for a single year, in the absence of an express order or recommendation by the circuit court to the department.[1] Indeed, the department is required to suspend such a driver's license "for a period of not less than 90 days, nor more than two years". MCL 257.319; MSA 9.2019.

The significance of this policy to the individual immunity issue is obvious. If the individuals were doing nothing more than applying a mandatory policy, then they had no control over their actions. Even though their functions were "ministerial", since they had "no choice", *Ross, supra,* p 634, their actions could not have been tortious, since they acted conscientiously, according to a mandatory departmental policy. They could not have been negligent. Nevertheless, we cannot base our decision on this alleged policy, since it is not referred to in the pleadings. Rather, we believe that none of the individual defendants may be held liable because their duty is to the public rather than to particular individuals and their issuance of a license to Barker was not a proximate cause of the accident, as a matter of law.

In *Zavala v Zinser,* 123 Mich App 352; 333 NW2d 278 (1983), *aff'd sub nom Ross, supra,* the plaintiffs alleged that the defendants, police officers, had breached their duty to preserve the peace. This Court held that the plaintiffs had failed to state a claim, because the defendants' duty "is owed to the public generally and not to particular individuals; for breach of that duty an officer is not liable to any particular individual but

---

[1] We will discuss the adequacy and legality of this policy elsewhere in this opinion.

only to the public." *Zavala, supra,* p 356.[2] In *Rose v Mackie,* 22 Mich App 463; 177 NW2d 633 (1970), *lv den* 383 Mich 787 (1970), the plaintiff averred that the State Highway Commissioner had wilfully violated a duty to ensure that a certain highway was built in a safe manner. This Court ordered dismissal, holding that defendant's duty was a "public duty". *Id.,* p 468.

Plaintiff alleges a breach of defendants' duty to keep individuals with recent, serious traffic offenses off the road. This, we believe, is a public duty. The individual defendants may not be held liable for the alleged negligent issuance of the license to Barker.

We also hold that defendants' conduct could not have been a proximate cause of plaintiff's injury. "The proximate cause of an injury has been defined as that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred", *Weissert v Escanaba,* 298 Mich 443, 452; 299 NW 139 (1941); *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389; 362 NW2d 293 (1984). Whether an intervening act of negligence, or even a criminal one, constitutes a superseding cause is a jury question, provided that "the prior negligence is still operating". *May v Parke, Davis & Co,* 142 Mich App 404; 370 NW2d 371 (1985); *Taylor, supra,* p 402.

Even if we accept the basic premise underlying this action, that the Secretary of State's issuance of a license caused Barker to drive in violation of the initial probation order,[3] other allegations in

---

[2] In *Ross,* the Supreme Court declined to address the public/private duty distinction, but affirmed on the basis of individual immunity. 420 Mich 658-659.

[3] We express no view on this troublesome issue. Of course, we are bound to accept plaintiff's allegations as true on appeal from these summary judgments.

the complaint render completely illogical any supposition that defendants' actions caused Barker to drive to the scene of this accident. Plaintiff admits that the circuit court amended the probation order well before the accident. The amended order allowed Barker to drive, but only to and from work. Hence, the circuit judge intended that Barker have a driver's license at the time of the accident. Even if defendants had followed the court's probation orders to the letter, they would have issued a license to Barker, and he still would have been able to drive.

Defendants cannot be said to have caused the injury by issuing the license, when the licensee later appeared before the circuit court and was ordered to drive only to and from work. The allegedly negligent issuance of the license was no longer an operative cause of the accident once the circuit court allowed Barker limited driving privileges. If defendants had issued a "restricted" license, to reflect the amended probation order, the accident would still have occurred. Plaintiff admits that Barker was in wilful violation of the probation order when he inflicted the injury upon her. Accepting plaintiff's allegations as true, there is no possibility that defendants caused the accident. Summary judgment was proper.

### INTENTIONAL DISREGARD OF COURT ORDER AND STATUTORY DUTY

Plaintiff argues that defendants violated or disregarded circuit court orders when they issued the license, thereby placing themselves beyond the protection of governmental immunity. See, *Layton v Quinn,* 120 Mich App 708, 721-722; 328 NW2d 95 (1982); *Semler v Psychiatric Institute of Washington, DC,* 538 F2d 121 (CA 4, 1976). This argument

lacks merit. As noted above, the defendants' actions could not have caused the accident. In addition, we agree with the trial courts that the transmittal of the "Abstract Report of Court Order and Record of Conviction" does not constitute a court order directed to the department. Whether defendants were obligated to follow the terms of probation ordered by the circuit court depends on the meaning of the following provision:

"Upon recommendation of the court imposing sentence, the secretary of state shall suspend the operator's or chauffeur's license, if any, of any person convicted hereunder, for such period as recommended by the court, which recommendation, when made by the court, shall be included in the sentence." MCL 752.192; MSA 28.662.

A departmental policy provides that the terms of probation not be followed by the department unless the circuit court specifically states that it recommends suspension to the department. We believe this policy is insufficient to fulfill the purpose which the Legislature sought to fulfill by enacting MCL 752.192. When the circuit court sends a summary of its order to the department, it does so for some reason. We believe that reason is to inform the department not only that the defendant was convicted of a major traffic offense, but to recommend a license suspension with a duration conforming to the terms of the probation order. In such cases, the circuit court, being in direct contact with the defendant, is in a better position to determine an appropriate disposition of the matter, in light of the nature of the offense and the offender. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). "[T]he protection of society", a prime consideration of the sentencing court, *id.,* p 550,

will not be enhanced by the department's perspective with respect to its duty under MCL 752.192.

Our conclusion that the department's policy violated the statute rather than a court order does not render it liable to plaintiff, however. Its duty to conform to the circuit court's probation order (directed to the driver) arises from the statute, not directly from the order itself. There was no violation of a court order, but a violation of the statute which, we have concluded, requires conformity to the terms of probation transmitted by the sentencing court to the department. The issue posed is whether defendants can be held liable for violating the statute. We think not.

We have already noted that the statutory duty is one owed to the general public, not to any individual citizen. In *Randall v Delta Charter Twp*, 121 Mich App 26; 328 NW2d 562 (1982), this Court found insufficient to state a claim allegations that the defendant wilfully failed to enforce a township ordinance despite having knowledge of a violation. The Court held that a governmental agency may not be held liable for even an intentional failure to enforce a statute "in the absence of a statute authorizing the imposition of liability". *Id.*, p 34. The Court noted that "virtually all decisions not to enforce an ordinance will be made in a wilful manner". *Id.*, p 33.

We disagree with plaintiff's implied contention that simple negligence can be transformed into an intentional tort by a mere allegation that the activity was "intentional, wilful, and in conscious disregard of the consequences". *Elliott v Dep't of Social Services*, 124 Mich App 124, 129; 333 NW2d 603 (1983). Where the act complained of is one of omission rather than commission, it is not an intentional tort. *Randall, supra*, p 34. See, also, *Shunk v Michigan (After Remand)*, 132 Mich App

632, 636; 347 NW2d 767 (1984), *lv den* 419 Mich 921 (1984); *Mosqueda v Macomb County Youth Home,* 132 Mich App 462, 467; 349 NW2d 185 (1984). Defendants' failure to suspend Barker's license for a full two years was an omission. It does not amount to a "traditional intentional tort". *Shunk, supra,* p 636. Furthermore, it is the department's alleged policy which we hold improper here. The employees were merely acting in conformity with the policy. We are also satisfied that whoever in the department decided to promulgate the erroneous policy exercised judgment and made a discretionary decision thereby coming within the protective immunity of *Ross.*[4]

## NUISANCE

"Nuisance is a condition and not an act or failure to act." 58 Am Jur 2d, Nuisances, § 3, p 557. Plaintiff alleges that the presence of Barker on the road was a dangerous condition created by defendants. We are not persuaded by this argument. Defendants did not create the dangerous condition. Barker did so by drinking and driving. Defendants neither participated in Barker's consumption of spirits nor had any right of control over his actions. *Randall, supra,* p 35. Barker could have driven with or without a license so long as he could obtain a set of car keys.

In *Disappearing Lakes Ass'n, supra,* this Court rejected the plaintiffs' theory that the mere issuance of a permit provided the "control" requisite to a nuisance claim:

"It has been argued that the department did 'control'

---

[4] We assume that once advised by this opinion of the proper procedures to follow, the employees of the Department of State will act accordingly.

the creation of the nuisance by granting the various permits to dredge. Certainly if the permits had not been granted, no dredging would have resulted and, with no dredging, no loss of lake level to the plaintiffs.

"* * * Nearly every permit made by a government agent in the exercise of statutory discretion results in some affirmative action being taken. These affirmative actions can have side results unthought of or unforeseeable. These results can be labeled 'nuisances' and the granting authority can be sued unless governmental immunity's wings are broad enough to protect them.

"A Secretary of State representative can return a driver's license to someone who has had two convictions for driving under the influence. The agent intends to permit the licensee to drive on public highways. The licensee returns to his old habits and drives while under the influence. He is a dangerous nuisance on the highways. He kills an innocent pedestrian. Is the state responsible because of the creation of an intentional nuisance?

\* \* \*

"The list of illustrations can be endless. There are licensed but still sometimes incompetent and therefore dangerous druggists, plumbers, contractors, and what have you. Is the licensing governmental agency responsible for all the injury caused by the licensee?

"If there is a shred of protection left in the umbrella of governmental immunity, it should protect the state and its agency in this matter. There is no question but that the state granted permits to dredge. They expected channels to be built. It is not alleged and pleaded that the state intended the plaintiffs' lake levels be lowered. It is not alleged and pleaded that the state owned the land, owned the dredging equipment, operated the dredging equipment or in any way controlled the actual dredging except as it exercised the discretionary power to grant or refuse to grant permits to dredge. If governmental immunity is removed under such circumstances, it should be removed by the Legislature and not by this Court." *Id.,* pp 69-71.

In *Ross, supra,* p 657, the Supreme Court ex-

pressly affirmed this Court's analysis in *Disappearing Lakes,* stating, "Plaintiffs essentially asserted only a negligence claim". See, also, *Stemen v Coffman,* 92 Mich App 595, 598; 285 NW2d 305 (1979). Plaintiff has failed to state a nuisance claim.

### HIGHWAY EXCEPTION

Plaintiff relies on the following section of the governmental immunity statute:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * *." MCL 691.1402; MSA 3.996(102).

Although the Secretary of State has "jurisdiction", *id.,* in the field of licensure of drivers, he does not control the highways upon which they travel. Obviously, this provision deals with injuries resulting from the condition of the road itself, not the condition of travelers thereon. This statutory exception to governmental immunity does not apply.

Plaintiff persists, however, arguing that "the fact that [the statute] has never been so construed before is [of] little consequence". Plaintiff cites *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426, 430; 202 NW2d 577 (1972), for the view that a "court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme,

since it is important that new legal theories be explored". Quoting, 5 Wright & Miller, Federal Practice and Procedure, § 1357, p 603.

We agree with the view set forth in *Crowther,* but to sustain plaintiff's "new legal theory" would require us to expand the plain meaning of the highway exception so far beyond its clearly stated purpose as to usurp the legislative function. The Legislature has created a specific, limited exception to its broad grant of immunity. We refuse to stretch the language of that exception beyond the realm of reasonable interpretation. The trial courts correctly dismissed this claim.[5]

Affirmed.

---

[5] The entire issue of whether the state or its employees should be liable for injuries caused by improperly licensed drivers is so permeated with policy considerations that it is more appropriately a matter of legislative concern.