*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LOREN KROLL, by RONALD KROLL and
SUSAN KROLL, Legal Guardians,

        Plaintiffs-Appellees,

v

DELORES DEMORROW and MONTAGUE AREA
PUBLIC SCHOOLS,

        Defendants-Appellants.

UNPUBLISHED
June 25, 2020

No.   341895
Muskegon Circuit Court
LC No.   16-006224-NI

## ON REMAND

Before:  METER, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

This matter is again before this Court following remand by the Michigan Supreme Court. We again reverse and remand.

In our original opinion, we reversed the order of the trial court denying defendants' motion for summary disposition. *Kroll v DeMorrow*, unpublished opinion per curiam (No. 341895, issued 2/26/2019). The Supreme Court by order reversed our holding related to cause-in-fact and vacated our judgment on proximate cause, and remanded for further proceedings. *Kroll v DeMorrow*, ___ Mich ___ (No. 159413, rel'd 1/17/2020). After further consideration on remand, we conclude that defendant DeMorrow was entitled to summary disposition because there is no genuine issue of material fact that she was not grossly negligent and, accordingly, defendant Montague Area Public Schools (MAPS) was entitled to summary disposition because, absent DeMorrow's gross negligence, MAPS cannot be held vicariously liable.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ray v Swager*, 501 Mich 52, 61-62; 903 NW2d 366 (2017). Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10).

Summary disposition is proper under MCR 2.116(C)(7) if "immunity by law" requires entry of judgment. The moving party may submit affidavits, depositions, admissions, or other documentary evidence, and this evidence must be considered in a light most favorable to the nonmoving party. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012), lv den 492 Mich 870 (2012). "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. But when a relevant factual dispute does exist, summary disposition is not appropriate." *Id.* (quotation marks and citation omitted). "The determination whether a governmental employee's conduct constituted gross negligence under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Oliver v Smith*, 269 Mich App 560, 563; 715 NW2d 314 (2006).

Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In considering a motion under MCR 2.116(C)(10), a court must consider all evidence submitted by the parties in a light most favorable to the nonmoving party. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted).

We turn first to the question whether there is a genuine issue of material fact that DeMorrow was not grossly negligent. We conclude that there is not.

Gross negligence is defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8). By defining gross negligence in this manner, the Legislature limited the situations where governmental employees can be held liable for their conduct to situations where their conduct was substantially more than negligent. *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999); see also *Xu v Gay*, 257 Mich App 263, 271; 668 NW2d 166 (2003) (stating that "[e]vidence of ordinary negligence does not create a question of fact regarding gross negligence"). In *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004), this Court stated the following regarding gross negligence:

> Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.

> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge.

There is conflicting evidence regarding whether DeMorrow activated the bus's caution light before the accident. But, as will be discussed below, we conclude that, even accepting plaintiffs' evidence that DeMorrow did not activate the bus's lights, this omission does not support a conclusion that DeMorrow was grossly negligent.

According to plaintiffs, by failing to activate the overhead caution lights, DeMorrow violated MCL 257.1855(2)(b). This statute provides, in pertinent part:

> (2) The driver of a school bus while operating upon the public highways or private roadways open to the public shall receive or discharge pupils from the bus in the following manner:
>
> * * *
>
> (b) If the pupils are required to cross the roadway, the driver of a school bus equipped with red and amber alternately flashing overhead lights . . . shall activate the alternately flashing overhead amber lights not less than 200 feet before the stop, stop the bus on the roadway or private road to provide for the safety of the pupils being boarded or discharged, deactivate the alternately flashing overhead amber lights, and activate the alternately flashing overhead red lights while receiving or discharging pupils. The bus shall stop in the extreme right-hand lane for the purpose of boarding or discharging pupils. Before resuming motion, the driver shall deactivate these lights and allow congested traffic to disperse where practicable. The deactivation of these lights is the signal for stopped traffic to proceed.

Assuming, as we must, that DeMorrow failed to activate the caution lights, she violated MCL 257.1855(2)(b). A violation of the statute creates a rebuttable presumption of negligence. *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 82 n 5; 600 NW2d 348 (1999). But, evidence of ordinary negligence does not create a question of fact regarding gross negligence. *Xu*, 257 Mich App at 271. Accordingly, even assuming that DeMorrow violated MCL 257.1855(2)(b), that does not create a question of fact regarding whether DeMorrow was grossly negligent.

DeMorrow's failure to activate the overhead caution lights, at most, creates a rebuttable presumption that DeMorrow was negligent, *Candelaria*, 236 Mich App at 82 n 5, i.e., that DeMorrow failed to exercise the care that a reasonably careful person would use under the circumstances, *Case v Consumers Power Co*, 463 Mich 1, 6-7; 615 NW2d 17 (2000). But plaintiff did not present evidence to create a genuine issue of material fact that DeMorrow's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results. MCL 691.1407(8).

There is a factual dispute whether Loren was in the process of crossing the road when she was hit by Ryan Yost's pickup truck. Yost and his passenger, EhanTiemeyer, testified that Loren was in the road when she was hit. Juan Guerrero, a passenger on the bus, averred that he was sitting on the driver's side of the bus that morning. He was able to see Loren in plaintiffs' driveway waiting for the bus. Juan saw Loren start to walk across the road before the bus came to a complete stop. But, plaintiffs' reconstruction expert, Timothy Brown, stated that he had reviewed

depositions, the crash and investigation reports, and photographs of the accident. He opined that, more likely than not, Loren "was on or near the shoulder of the road at the end of her driveway and near the end of the pavement" when she was struck by Yost's pickup truck. Loren's injuries, the blood seen in the driveway, and the damage to Yost's pickup truck were not consistent with the theory that Loren was walking in the road when she was struck. Additionally, Deputy Steve Ward stated that, if Loren had been crossing the road when she was hit, he would expect that Loren would have been hit on her left side. If Loren had been standing in the driveway, it was possible that she could have been struck by the far right edge of the snowplow blade that was on Yost's pickup truck, which could explain the damage to her right hip.

Although there is a factual dispute concerning Loren's location when she was struck by the vehicle, we conclude that the dispute is not material because, even when viewing the evidence in a light most favorable to plaintiffs, reasonable minds could not conclude that DeMorrow's "conduct [was] so reckless as to demonstrate a substantial lack of concern for whether an injury result[ed]."

DeMorrow stated in her deposition that she had started to slow the bus down. According to DeMorrow, when she is picking up a student who has to cross the road to board the bus, after she brings the bus to a complete stop, she flips a switch that opens the door, activates the bus's red stop lights, and extends the bus's stop sign. The student is not supposed to cross the road until DeMorrow gives the student "the signal" to cross the road. DeMorrow signals a student by extending her left arm and moving it in "a passing fashion." Similarly, Juan and his sister Yvette averred that one of the bus rules was that a student was not to start to cross the road until DeMorrow gave a hand signal. DeMorrow gave the hand signal after the bus came to a complete stop and turned on the overhead red stop lights.

There was also evidence that Loren did not always wait to cross the road until DeMorrow stopped the bus and signaled her. DeMorrow testified that Loren "[q]uite often" started to cross the road after she activated the bus's red lights and before she gave the signal to Loren. DeMorrow had told Loren in the past that Loren needed to wait for the signal before she crossed the road. DeMorrow had reported Loren's conduct to Robert Lash, the MAPS's transportation supervisor. The last report was about two years ago. Juan and Yvette averred that Loren often walked into the road without waiting for DeMorrow to signal her. DeMorrow often warned Loren not to cross the road before DeMorrow gave her the signal

DeMorrow was aware that a pickup truck was coming down the road from the opposite direction. While the slowing of the bus may have suggested to Loren that the bus would stop for her, there is no evidence that DeMorrow gave Loren any instructions or gestured for her to cross the road. The bus had not yet come to a stop when Loren was hit by Yost's pickup truck, and there is no evidence that DeMorrow from afar signaled Loren to cross the road. Additionally, while there was evidence that Loren often did not wait until she was signaled by DeMorrow to cross the road, there was no evidence to indicate that DeMorrow knew that Loren had started to cross the road. DeMorrow testified that, after she saw Loren in plaintiffs' driveway, she kept her eyes on the road. While Juan stated that he saw Loren begin to cross the road before the bus stopped, he did not aver that he told DeMorrow that Loren had started to cross the road. In conclusion, where DeMorrow did not give Loren any instructions to cross the road and DeMorrow did not know that Loren had started to cross the road, reasonable minds could not conclude that DeMorrow, by

failing to activate the caution lights, simply did not care about the safety or welfare of Loren. *Tarlea*, 263 Mich App at 90. Therefore, even when viewing the evidence in a light most favorable to plaintiffs, we conclude that DeMorrow was not grossly negligent. Accordingly, she was entitled to summary disposition.

Having resolved the gross negligence issue, we now turn to whether MAPS can be held vicariously liable. We conclude that it cannot.

MCL 691.1407 provides, in pertinent part:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. . . .

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

There are six exceptions, including the motor vehicle exception, MCL 691.1405, to the immunity granted to governmental agencies. *Goodhue v Dep't of Transp*, 319 Mich App 526, 531 n 1; 904 NW2d 203 (2017).

In *Yoches v Dearborn*, 320 Mich App 461, 475-476; 904 NW2d 887 (2017), this Court addressed when a governmental agency can be held vicariously liable for the acts of its employees. After quoting MCL 691.1407, the Court stated:

> This statutory language is unambiguous. MCL 691.1407(1) provides immunity to a governmental agency without regard to an employee's gross negligence. MCL 691.1407(2) provides immunity for governmental employees, but MCL 691.1407(2)(c) provides an exception to that immunity when the employee's conduct constitutes gross negligence. Although Subsection (2)(c) establishes an exception to the grant of immunity to an officer or employee of a governmental agency, it does not provide that a governmental agency otherwise entitled to immunity can be vicariously liable for the officer's or employee's gross

-5-

negligence. Consequently, if an exception to governmental immunity does not apply "as otherwise provided in this act," e.g., pursuant to the motor vehicle exception, the [defendant] would not be vicariously liable for [it's employee's] negligence, regardless of whether it rises to the level of gross negligence. See, e.g., *Hobrla v Glass*, 143 Mich App 616, 624; 372 NW2d 630 (1985) (providing that under MCL 691.1407(1), "[t]he department's immunity extends to allegations of vicarious liability, since the individual defendants, even if they acted negligently, were also engaged at the time the tort was committed [in] the exercise or discharge of a governmental function")[.] [*Id.* at 476-477.]

MAPS cannot be held vicariously liable for the alleged gross negligence of DeMorrow. None of the six exceptions to the immunity granted to governmental agencies applies. The trial court held that the motor vehicle exception did not apply because the school bus did not physically touch Loren,[1] and plaintiffs have not challenged that ruling on appeal. Because no exception to governmental immunity applies, MAPS cannot be held vicariously liable for DeMorrow's negligence, even if her conduct rose to the level of gross negligence. *Id.*

We also reject plaintiffs' suggestion that, because the trial court never determined whether MAPS could be held vicariously liable for DeMorrow's gross negligence, it is premature for this Court to decide the issue. The applicability of governmental immunity is a question of law, *Ray*, 501 Mich at 61, and there are no factual disputes relevant to whether MAPS can be held vicariously liable for DeMorrow's alleged gross negligence. It would be a waste of judicial resources to require that this issue first be addressed by the trial court.

Reversed and remanded with instructions to the trial court to enter summary disposition in favor of defendants. We do not retain jurisdiction. Defendants may tax costs.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Thomas C. Cameron

---

[1] See *Robinson v City of Detroit*, 462 Mich 439; 613 NW2d 307 (2000).