ALCONA COMMUNITY SCHOOLS v STATE OF MICHIGAN

Docket No. 172850. Submitted February 20, 1996, at Lansing. Decided
April 5, 1996, at 9:05 A.M. Leave to appeal denied, 452 Mich ___.

The Alcona Community Schools and several other public school dis-
tricts brought an action in the Court of Claims against the State of
Michigan, seeking payment by the defendant of the employer por-
tion of social security taxes for certain employees of the plaintiffs
pursuant to an agreement between the Michigan Public School
Employees' Retirement Board and the State Employees' Retirement
Board. The court, James R. Giddings, J., granted summary disposi-
tion for the defendant. The plaintiffs appealed.

The Court of Appeals *held:*

1. The plaintiffs failed to establish that the Michigan Public
School Employees' Retirement Board or the State Employees'
Retirement Board intended the plaintiffs to be third-party benefi-
ciaries of the contract between the boards providing for payment
by the defendant of the social security taxes at issue. Accordingly,
the plaintiffs may not seek enforcement of the agreement as third-
party beneficiaries.

2. The Legislature, in enacting 1989 PA 194, § 41(9), MCL
38.1341(9); MSA 15.893(151)(9), which provided that amounts for
the employer portion of the social security taxes at issue be appro-
priated annually, intended to authorize, but not require, future leg-
islatures to appropriate such amounts.

Affirmed.

1. CONTRACTS — THIRD-PARTY BENEFICIARIES.

An objective test is used to determine whether a party to a contract
intended a person to be a third-party beneficiary of the contract;
where the contract is primarily for the benefit of the parties
thereto, the fact that a third person is incidentally benefited does
not give the third person rights as a third-party beneficiary (MCL
600.1405; MSA 27A.1405).

2. STATUTES — APPROPRIATIONS.

The Legislature's intent in enacting a statute providing for annual
appropriations that do not take initial effect during the ensuing fis-
cal year is to authorize, but not require, such appropriations.

*Hardy, Lewis, Pollard & Page, P.C.* (by *Dennis R. Pollard* and *Richard E. Kroopnick*), for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Paul J. Zimmer* and *Jane O. Wilensky*, Assistant Attorneys General, for the defendant.

Before: NEFF, P.J., and SMOLENSKI and D. A. JOHNSTON,* JJ.

PER CURIAM. Plaintiffs in this school-funding dispute appeal as of right from an order of the Court of Claims granting summary disposition in favor of defendant. We affirm.

I

In 1956, the Michigan Public School Employees' Retirement Board, on behalf of defendant, and the State Employees' Retirement Board (SERB) entered into an agreement that provided a mechanism by which defendant would pay the employer share of social security contributions due the federal government for certain public school employees. A subsequent modification of the agreement extended its coverage to most public school employees.

Before 1987, the federal government collected directly from defendant the employer share of social security contributions due from defendant and its political subdivisions, including plaintiffs. In 1987, however, the federal government began collecting these sums directly from the political subdivisions. From 1987 through 1989, defendant appropriated sufficient funds to cover one hundred percent of each

* Circuit judge, sitting on the Court of Appeals by assignment.

Michigan school district's share of the social security contributions. In 1989, however, the Legislature enacted 1989 PA 197, which allowed for the recapture from certain school districts[1] of funds allocated to cover the districts' share of social security contributions.

Plaintiffs instituted this suit as a result of the decrease in funding. Plaintiffs seek money damages in the amount of the lost funding due to the recapture, and specific performance of the 1956 agreement.

II

Plaintiffs first argue that the trial court erred in failing to require defendant to fund the employer's share of social security contributions due for public school employees pursuant to the agreement[2] between the Michigan Public School Employees' Retirement Board, on behalf of defendant, and the SERB. We disagree.

Because plaintiffs were not a party to the agreement, they would have rights under the agreement only as third-party beneficiaries. Third-party beneficiary law in Michigan is controlled by statute. MCL 600.1405; MSA 27A.1405 provides in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

---

[1] The recapture affected only those school districts that were "out of formula." For a discussion of the meaning of the term "out of formula," see *Schmidt v Dep't of Ed*, 441 Mich 236, 244-245; 490 NW2d 584 (1992).

[2] For the purposes of analyzing this issue, we assume without deciding that the 1956 agreement is a valid contract between defendant and the SERB.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The test created by this statute is objective; the subjective intent of the parties to the contract is irrelevant. *Alden State Bank v Old Kent Bank-Grand Traverse*, 180 Mich App 40, 44; 446 NW2d 599 (1989). Further, where the contract in question is primarily for the benefit of the parties thereto, the fact that a third person is incidentally benefited does not give that third person rights as a third-party beneficiary. *Id.*

Here, plaintiffs have wholly failed to show that they are intended beneficiaries of the 1956 agreement. This is not to say that plaintiffs were not benefited by the agreement. That, however, is not the test. Plaintiffs must demonstrate that the parties to the agreement intended to do, or refrain from doing, something directly for plaintiffs' benefit.

On our review of the agreement, we fail to find any objective intent on the SERB's part to directly benefit plaintiffs. The SERB represents the interest of public school employees, not individual school districts. The SERB is charged with managing the retirement system "created for the employes of the state of Michigan." MCL 38.2; MSA 3.981(2). The agreement directly benefits plaintiffs' employees, not plaintiffs, in providing that social security contributions are made. The employees are not concerned with which entity makes the payments, as long as they are made.

Further, we find no intent on defendant's part to directly benefit plaintiffs. Again, defendant's commitment under the agreement is to the employees, i.e., if

the social security contributions are not made, the employees are the parties injured, not plaintiffs.

Accordingly, we agree with the trial court that plaintiffs are not entitled to force defendant to fully fund the employer portions of the social security contributions on the basis of the 1956 agreement. Plaintiffs are not third-party beneficiaries of the agreement.

III

Plaintiffs next argue that defendant, by enacting 1989 PA 194, § 41(9), MCL 38.1341(9); MSA 15.893(151)(9), is bound to continue funding the employer's share of social security contributions due for public school employees. We disagree.

1

For the fiscal years at issue,[3] MCL 38.1341(9); MSA 15.893(151)(9) provided in pertinent part:

> The amounts required for the employer's share of social security contributions for employees of the reporting units shall be appropriated annually. The appropriation shall be paid from the state school aid fund for employees of a public school district or intermediate school district from the general fund of the state for employees who are other public school employees.

Plaintiffs contend this language binds defendant to continue to fund the social security payments at issue. Plaintiffs' argument raises the question of the legislative intent behind this statutory provision. We determine the intent behind funding legislation in the

---

[3] This statutory provision was substantively amended and renumbered by 1994 PA 272. Because this case was brought before 1994 PA 272 was enacted, however, the amendments are not before us.

same manner as any other statute. *Grand Traverse Co v Michigan,* 450 Mich 457, 464; 538 NW2d 1 (1995). Thus, we interpret the statute in order to ascertain and give effect to the intent of the Legislature. *People v Stanaway,* 446 Mich 643, 658; 521 NW2d 557 (1995).

2

In *Oakland Schools Bd of Ed v Superintendent of Public Instruction,* 392 Mich 613; 221 NW2d 345 (1974), our Supreme Court determined that statutory language that purports to fiscally bind successive legislatures acts only as an intention to appropriate, rather than a mandate to do so.

In *Oakland,* a legislative enactment, 1970 PA 100, § 16a(5), which the plaintiff alleged appropriated $400,000 to school districts operating a data-processing program was at issue. *Oakland* at 615. In an attempt to effectuate this provision, the Legislature passed 1971 PA 134, § 16a(5). The Governor, however, vetoed that provision. The Oakland schools filed suit to force payment of the funds allocated by 1970 PA 100, § 16a(5), arguing that the Governor's veto of the subsequent bill did not affect the validity of that provision, which, according to the plaintiff, bound the Legislature to appropriate the funds in subsequent fiscal years. *Oakland* at 615-617.

In its analysis, the Supreme Court considered the effect of funding legislation that does not take initial effect during the ensuing fiscal year. The Court determined that such legislation is only an authorization, or an intention, to appropriate. *Id.* at 620. The Court based its conclusion on the fact that our constitution calls for annual review of the budget to provide for fiscal accountability in both the legislative and execu-

tive branches. *Id.* at 621. To hold otherwise, according to the Court, would be to allow the Legislature to appropriate funds in advance of its ability to forecast the availability of revenue, and would force the Governor to approve or veto expenditures well in advance of his ability to assess the fiscal needs of the state. *Id.*

The Court thus held that to the extent 1970 PA 100, § 16a(5) called on future legislatures to appropriate necessary funds, it expressed a mere intention, rather than a requirement. *Id.*

We conclude that MCL 38.1341(9); MSA 15.893(151)(9), which like the law before the Court in *Oakland*, requires further legislative action to actually appropriate the funds, cannot bind successive legislatures and acts as a mere intention to appropriate funds in the future.

3

We recognize that under facts at first glance seemingly similar to this case, i.e., defendant failed to pay for sums allegedly obligated by statute, our Supreme Court allowed a money judgment against defendant to stand. *City of Adrian v Michigan*, 420 Mich 554; 362 NW2d 708 (1984). The Court in *Adrian*, however, specifically noted that the issue whether defendant was obligated to reimburse the plaintiff was waived because the state failed to appeal that portion of the Court of Claims judgment indicating that a legal obligation to fund arose as a result of a previously enacted statutory provision. *Id.* at 563-564. In other words, the precise issue before us here was not addressed in *Adrian*, and we our bound to follow *Oakland, supra.*

4

Accordingly, we hold that defendant is not statutorily bound to continue the funding at issue.

The trial court's order granting summary disposition to defendant is affirmed.