KOENIG v CITY OF SOUTH HAVEN

Docket No. 180870. Submitted January 14, 1997, at Detroit. Decided February 21, 1997, at 9:40 A.M. Leave to appeal sought.

Carol J. Koenig, individually and as personal representative of the estate of Jennifer L. Koenig, deceased, and Frederick G. Koenig brought an action in the Van Buren Circuit Court against the City of South Haven and several individuals, seeking damages for injuries suffered by Jennifer in May 1990 when a large wave swept her off a local pier that extended into Lake Michigan. Jennifer died in July 1995. The plaintiffs alleged that the defendants had assumed a duty to erect barricades that, during periods of dangerous lake conditions, would prevent access to the pier. The Department of Social Services and the Attorney General intervened as plaintiffs, seeking reimbursement for the cost of the care provided Jennifer between May 1990 and July 1995. The trial court, Meyer Warshawsky, J., granted summary disposition for the city and entered a judgment of no cause of action for the individual defendants consistent with the verdict of the jury. The plaintiffs appealed and the defendants cross appealed.

The Court of Appeals *held*:

1. The trial court erred in granting summary disposition for the city with regard to the plaintiffs' third-party beneficiary claim. The trial court erred in finding that the decedent was not an intended third-party beneficiary of a Memorandum of Understanding between the city and the Detroit District Corps of Engineers, the builder of the pier, under which the city agreed to restrict public access to the pier during inclement weather to protect the safety of individuals who would attempt to use the pier during times of dangerous weather. The plaintiffs properly pleaded a claim for damages under a third-party beneficiary theory. The order granting summary disposition for the city must be reversed.

2. Summary disposition should not have been granted to the city because a question of fact exists regarding whether the city received consideration for its duties under the Memorandum of Understanding.

3. The trial court properly excluded hearsay testimony regarding the number of people who previously had been swept off the pier and whether the "sweep-offs" resulted in drownings.

4. The trial court did not err in prohibiting the plaintiffs' expert witnesses from testifying that the individual defendants were grossly negligent. The jury did not need the experts' opinion to determine whether the individual defendants were grossly negligent and the experts' testimony could have unduly invaded the province of the jury to determine that primary question.

5. The trial court erred in failing to take judicial notice of certain Michigan statutes admitted into evidence as part of the plaintiffs' trial exhibits; however, the error was harmless.

6. Because no error requiring reversal occurred during the trial, the jury's verdict of no cause of action with regard to the claim of gross negligence against the individual defendants must be affirmed.

7. The trial court properly denied the defendants' motion for a directed verdict based on governmental immunity because the issue was not raised as a defense before the plaintiffs rested their case.

8. The trial court should have granted the defendants' motion for a directed verdict on the basis of the plaintiffs' failure to present evidence of the requisite special relationship between the individual defendants and the decedent. Under the public-duty doctrine, the defendants' motion for a directed verdict with regard to the plaintiffs' gross negligence claim should have been granted. Reversal with regard to this issue is not required, however, because of the Court of Appeals affirmance of the judgment of no cause of action with regard to the claim of gross negligence against the individual defendants.

Affirmed in part, reversed in part, and remanded for a new trial against the City of South Haven.

1. CONTRACTS — ACTIONS — THIRD-PARTY BENEFICIARIES.

It must be determined that an individual was an intended third-party beneficiary of a contract to which the individual is not a party before the individual may sue on the contract; third-party beneficiary law in Michigan is controlled by statute (MCL 600.1405; MSA 27A.1405).

2. CONTRACTS — THIRD-PARTY BENEFICIARIES.

The test for whether a person is a third-party beneficiary of a contract is objective; the subjective intent of the parties to the contract is irrelevant; where the contract is primarily for the benefit of the par-

ties thereto, the fact that a third party is incidentally benefited does not confer rights on that person as a third-party beneficiary.

3. CONTRACTS — THIRD-PARTY BENEFICIARIES.

The statute regarding third-party beneficiaries of a contract does not limit potential third-party beneficiaries to narrowly defined or limited groups; the statute provides that any person for whose benefit a promise is made by way of contract may be a third-party beneficiary (MCL 600.1405; MSA 27A.1405).

4. CONTRACTS — DAMAGES — BREACH OF CONTRACT.

Actual damages that result from a breach of a contract may be recovered where such damages were in the contemplation of the parties at the time the contract was formed; for damages to be recoverable, the injury not only must be foreseeable, but somehow must be a consequence of the breach.

5. CONTRACTS — ELEMENTS.

The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation; the question whether there was consideration for a promise is a question for the trier of fact.

6. EVIDENCE — NEGLIGENCE — HEARSAY.

Although evidence of previous, similar accidents may be admissible to show a defendant's notice of an alleged defect, such notice may not be provided through hearsay evidence.

7. WITNESSES — EXPERT WITNESSES — OPINIONS — ULTIMATE ISSUE.

Although MRE 704 provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact, the rule does not allow an expert to invade the province of the jury and no witness is permitted to tell the jury how to decide a case.

8. EVIDENCE — STATUTES — JUDICIAL NOTICE.

Judicial notice of a Michigan statute is mandatory in the State of Michigan (MRE 202[b]).

9. GOVERNMENTAL IMMUNITY — GROSS NEGLIGENCE — PUBLIC-DUTY DOCTRINE — SPECIAL RELATIONSHIP.

A public official is regarded as owing a duty to the public in general and not to a specific individual unless a special relationship exists between the official and the individual such that performance by the official would affect the individual in a manner different in kind from the way performance would affect the public.

*Chambers Steiner* (by *Angela J. Nicita* and *Franklin J. Chambers*), for the plaintiffs.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Gail P. Massad*), for the City of South Haven, Scott Ratter, and Thomas Allred.

Before: DOCTOROFF, P.J., and HOOD and P. J. SULLIVAN*, JJ.

PER CURIAM. Plaintiffs appeal as of right from the trial court's order granting defendant City of South Haven's motion for summary disposition. Plaintiffs also appeal from the judgment entered pursuant to a jury verdict finding no cause of action in favor of the individual defendants. Plaintiffs argue that the trial court erred in excluding certain testimony from lay and expert witnesses. Finally, plaintiffs contend that the trial court erred in failing to take judicial notice of certain Michigan statutes. On cross appeal, defendants allege that the trial court erred in denying their motions for a directed verdict and summary disposition. We find that the trial court erred in granting defendant City of South Haven's motion for summary disposition. We also find that the trial court erred in failing to grant defendants' motion for a directed verdict with regard to plaintiffs' claim of gross negligence against the individual defendants. We affirm with regard to all other issues.

In this case, on May 10, 1990, in South Haven, Michigan, a large wave swept Jennifer Lynn Koenig off a pier extending into Lake Michigan. Although she was alive when rescued, she suffered severe and permanent injuries due to prolonged exposure and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

anoxia. She died in July 1995. At the time of the accident, the weather was drizzly, cold, and windy, and Lake Michigan was "wavy." In their complaint, plaintiffs, the parents of the deceased, alleged that defendants had assumed a duty to erect barricades that, during periods of dangerous lake conditions, would prevent access to the pier off which the deceased was swept.

In support of their claim that defendants had a contractual duty to prevent access to the pier in times of inclement weather, plaintiffs presented a document entitled "Memorandum of Understanding" (MOU) between the Detroit District Corps of Engineers and defendant City of South Haven. Plaintiffs alleged that the MOU obligated defendants to lock the gates to the pier when danger to persons or property warranted the closing. Plaintiffs further alleged that Jennifer Koenig, as an individual using the pier during inclement weather, was a third-party beneficiary of that contract.

For an individual to sue on a contract to which the individual is not a party, it must be determined that the individual was an intended third-party beneficiary of the contract. *Rhodes v United Jewish Charities of Detroit*, 184 Mich App 740, 744; 459 NW2d 44 (1990). Third-party beneficiary law in Michigan is controlled by statute. MCL 600.1405; MSA 27A.1405 provides in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said

promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The test for whether a person is a third-party beneficiary of a contract is objective; "the subjective intent of the parties to the contract is irrelevant." *Alcona Community Schools v Michigan*, 216 Mich App 202, 205; 549 NW2d 356 (1996). Where the contract is primarily for the benefit of the parties thereto, the fact that a third party is incidentally benefited does not confer rights on that person as a third-party beneficiary. *Id.* The law presumes that a contract has been executed for the benefit of the parties thereto, thus plaintiffs had the burden of proving that the decedent was an intended beneficiary of the contract. *Malesev v Garavaglia*, 12 Mich App 282, 286; 162 NW2d 844 (1968); *Moore Constr Co, Inc v Clarksville Dep't of Electricity*, 707 SW2d 1, 9 (Tenn App, 1985). The contract itself reveals the parties' intentions. *Rhodes, supra.*

In granting summary disposition for defendant City of South Haven on plaintiffs' third-party beneficiary claim, the trial court stated:

> Applying the objective test, we see that the City merely undertook the responsibility to manage the operation of the fence. The Corps of Engineers and the City made a promise to each other, not to every citizen who visits the South Haven North Pier. . . .
>
> Thus, we hold that plaintiff does not have [third-party beneficiary] status. This issue is not a question of fact, and therefore, will not go before the jury at trial. On the [third-party beneficiary] theory the plaintiff has failed to state a claim upon whether [sic: which] relief can be granted so summary disposition is proper.

Upon review de novo, *Borman v State Farm Fire & Casualty Co*, 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994), we disagree with the trial court and reverse its order of summary disposition with regard to this issue.

In contending that the MOU was intended to benefit individuals such as the decedent, who used the pier during inclement weather, plaintiffs relied exclusively on the language of the MOU. Section I of the agreement stated:

> *Purpose*: This Memorandum of Understanding establishes general guidelines concerning the furnishing of assistance by the City of South Haven in regulating the use of Federal Navigation structures within the City of South Haven, Michigan, during periods of inclement weather or when danger to persons or property exists, as authorized herein.

Pursuant to Section III of the MOU, the Corps of Engineers was to furnish and install fence-type barricades at the entrance to the piers, and the City of South Haven was "granted responsibility for coordinating and controlling entrance to the existing Federal navigational structures at the South Haven Harbor, during period [sic] of inclement weather." Section III(C) conferred upon the city the responsibility of determining when the gates were to be opened and closed.

Section V of the MOU stated as follows:

> *Federal Pier Regulations*: The public shall be restricted from the North and South Federal Piers in the City of South Haven during periods of inclement weather and when great danger to persons or property exists, said times to be determined by the city manager, or a person designated by him. Gates will be locked during each emergency and reopened immediately thereafter.

The MOU became effective on January 27, 1972.

In our extensive research of third-party beneficiary law in Michigan and other jurisdictions, we were unable to find a case with a fact pattern similar to the instant situation. As noted by defendants, most cases involving third-party beneficiary rights confer those benefits on a particular class of individuals. However, we note that the statute does not limit potential third-party beneficiaries to narrowly defined groups, but allows such status to "[a]ny person for whose benefit a promise is made by way of contract . . . ." MCL 600.1405; MSA 27A.1405 (emphasis added). Similarly, we were able to find no case law that would restrict intended third-party beneficiaries to a limited group.[1] Thus, although the class plaintiff alleges to be third-

---

[1] See *Johnson v Bobbie's Party Store*, 189 Mich App 652, 657-658; 473 NW2d 796 (1991), in which the defendant city passed a zoning variance allowing a building to violate the setback rule, with the stipulation that no parking would be allowed in front of the building. The structure was built, but the "no parking" signs were never installed. The plaintiff could not see around a truck parked in front of the store, got into an accident, and sued the store. In response to a motion for summary disposition, the plaintiff "argued, by analogy, that *as a member of the general public*, she was a third-party beneficiary of the agreement between defendant and the zoning commission." (Emphasis added.) Although this Court did not specifically address the plaintiff's third-party beneficiary argument, it found that the order of summary disposition should be reversed because the landowner assumed a duty not to create an unreasonable risk of harm to passing motorists.

See also *Rhodes v United Jewish Charities of Detroit*, supra at 744, in which the plaintiff was assaulted in the parking lot of defendant United Jewish Charities of Detroit (UJC), which was fenced in and guarded. The plaintiff's employer leased space from UJC in UJC's building adjacent to the parking lot. UJC also leased space in the building to defendant Jewish Vocational Services and Community Workshop (JVS), and, within that lease, JVS agreed to provide on-site security. This Court allowed the plaintiff to amend her complaint to add a claim under a theory that she was a third-party beneficiary of that contract. This Court stated, "When UJC required JVS to provide guard service for the parking lot, it must be assumed that the guard service was intended for the protection of *all who were to use the parking lot*." (Emphasis added.)

party beneficiaries could be virtually any member of the public who used the government pier during times of inclement weather, we find that the law does not prohibit such a class from being intended beneficiaries of the contract between defendant city and the Corps of Engineers.

The question then becomes whether plaintiffs' decedent was an intended beneficiary of the alleged contract[2] between defendant city and the Corps of Engineers. This determination must be made on the basis of an objective reading of the MOU. *Rhodes, supra.* As noted above, under the MOU, defendant city agreed to restrict public access to the piers in the City of South Haven "during periods of inclement weather and when great danger to persons or property exists." We find that the clear intention of the parties in entering into the MOU was to protect the safety of individuals who would attempt to use the pier during times of dangerous weather. Plaintiffs' complaint plainly alleged that their decedent was such an individual.

---

And see *Kornblut v Chevron Oil Co,* 62 AD2d 831; 407 NYS2d 498 (1978), aff'd 48 NY2d 853; 424 NYS2d 429; 400 NE2d 368; (1979), in which the State of New York had a contract with the defendant, Chevron Oil, to provide roadside automotive service on the New York State Thruway. The plaintiff's decedent got a flat tire and, when the roadside assistance failed to respond, he changed the tire himself. The plaintiff's decedent became ill and died soon thereafter of a myocardial infarction. The plaintiff sued the defendant, alleging that, as a motorist on the thruway, the decedent was a third-party beneficiary of the contract between the state and the defendant. The New York court agreed that the plaintiff's decedent was a third-party beneficiary of the contract, but denied recovery because his death was not "within the contemplation of the contracting parties as a reasonably foreseeable result of the failure of Chevron or its assignee to comply with the contract." 62 AD2d 837.

[2] Defendants dispute that the mou was a binding contract. This issue will be discussed.

In finding that plaintiffs' decedent was an intended third-party beneficiary of the MOU, we find instructive the Alabama case of *Holley v St Paul Fire & Marine Ins Co*, 396 So 2d 75 (Ala, 1981). There, the plaintiff injured herself while visiting a hospital, allegedly because of inadequate lighting. She sued under a third-party beneficiary theory, alleging that the hospital had a contract with the defendant to maintain the hospital, which the defendant breached. The court, finding a third-party beneficiary relationship existed, stated:

> Can there be any doubt that the hospital board does not make a maintenance contract for the direct benefit of the board members themselves? For whom does the board maintain the hospital? Obviously for those who will inhabit it for purposes of treatment, rehabilitation and cure. We may take judicial knowledge that visitors are not discouraged from using hospital facilities but, in fact, have physical hospital facilities provided for them. Thus they are expected to play a role in the scheme of patient hospitalization. Hospital maintenance, therefore, is necessary for their presence as it is for other expected occupants of hospital facilities, and the parties to a contract providing such maintenance intend visitors to derive a direct benefit from the rendition of those services. [*Id.* at 80.]

Accordingly, the Alabama Supreme Court found that the plaintiff, as a visitor to the hospital, was a third-party beneficiary of the contract between the hospital and the defendant maintenance company.

Similarly, in this case, we find that defendant City of South Haven did not enter into the MOU for the benefit of the city council or the city manager. The clear intention of the MOU was to benefit individuals who would use the pier during times of dangerous and inclement weather. Plaintiffs' decedent was not

intended to be merely an incidental beneficiary; instead, the parties had "undertaken to do something to or for the benefit" of individuals such as Jennifer Koenig. *Paul v Bogle*, 193 Mich App 479, 491; 484 NW2d 728 (1992). Accordingly, we find that the trial court erred in finding that plaintiffs' decedent was not a third-party beneficiary of the MOU.

Michigan law allows for recovery of damages that result from a breach of a contract if such damages were in the contemplation of the parties at the time the contract was formed. *Lawrence v Will Darrah & Associates, Inc*, 445 Mich 1, 11; 516 NW2d 43 (1994). "[T]o be recoverable the injury not only must be foreseeable but somehow must be a consequence of the breach." *McNeal v Tuori*, 107 Mich App 141, 150; 309 NW2d 588 (1981). In this case, plaintiffs' complaint alleged that their decedent was injured as a result of a foreseeable injury that was a consequence of defendants' breach of their promise to prevent access to the pier during inclement weather. The complaint further alleged that the contract was intended to benefit persons such as plaintiffs' decedent. Thus, plaintiffs properly pleaded a claim for damages under a third-party beneficiary contract claim, and the trial court erred in granting summary disposition with regard to this issue.

We note that, under a claim of a contract breach, plaintiffs can recover only their actual damages such as medical bills. This differs from a tort claim in that plaintiffs will not be able to claim noneconomic damages such as pain and suffering, emotional distress, and anxiety. *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 582-583; 543 NW2d 42 (1995). However, the issue of damages or the merit of plaintiffs' claim is

not before this Court. We merely hold that plaintiffs' complaint sufficiently stated a claim for a breach of contract, such that summary disposition was not proper.

Defendants contend that, even if the decedent was a third-party beneficiary of the MOU, summary disposition was proper because the MOU was not supported by mutual consideration and thus was not a binding contract. The trial court did not address this issue. We find that a question of fact exists regarding whether the City of South Haven received consideration for its duties under the MOU. Accordingly, summary disposition should not have been granted.

The essential elements of a contract are: parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Mallory v Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). Plaintiffs contend that the Corps of Engineers gave up its right to control access to the piers in exchange for the promise by the City of South Haven to restrict access to the piers during inclement weather. "Whether there was consideration for a promise is a question for the trier of fact." *Haji v Prevention Ins Agency, Inc*, 196 Mich App 84, 87-88; 492 NW2d 460 (1992). Accordingly, the alleged lack of consideration to support the MOU would not have been a proper ground for granting defendants' motion for summary disposition. Accordingly, the trial court's order of summary disposition for defendant City of South Haven cannot be affirmed on this ground, and we reverse. Upon remand, the trier of fact should determine (1) whether the promises made in the MOU were supported by binding consideration, and, if so,

(2) whether defendants breached the terms of the agreement.

Although we reverse the trial court's order granting summary disposition for defendant City of South Haven, plaintiffs further allege that errors occurred during the trial against the individual defendants. Thus, we will now address these claims, as well as defendants' issues on cross appeal.

Plaintiffs contend that the trial court erred in excluding testimony regarding the number of individuals who previously had been swept off the government piers in South Haven. We disagree. At trial, South Haven's acting city manager testified that he asked the fire chief if he could "find out how many people had been swept off the pier," and the chief, "gave me a number." Following defendants' objection based on hearsay, the court forbade the witness from testifying regarding the number of "sweep-offs" reported to him by the fire chief. Plaintiffs argued that they sought the information not for the truth of the matter asserted, but to show defendants had notice of the dangerous condition that allegedly led to the accident. While it is true that evidence of previous, similar accidents is admissible to show notice of an alleged defect, *Freed v Simon*, 370 Mich 473, 475; 122 NW2d 813 (1963), *Freed* does not state that such notice can be proved through hearsay. Although plaintiffs could have proved the number of "sweep-offs" through nonhearsay means, the trial court properly refused to admit the proffered hearsay evidence.

Plaintiffs similarly complain that certain testimony of their expert witness, David Smith, was improperly excluded. On the basis of hearsay, the trial court excluded Smith's testimony that fourteen previous

"sweep-offs" had occurred because such information was provided to Smith by a newspaper clipping. We find no error.

MRE 705 provides that an "expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise." Further, an expert may testify regarding an opinion based on hearsay information. *Swanek v Hutzel Hosp*, 115 Mich App 254, 260; 320 NW2d 234 (1982). In conformance with these rules, Smith was allowed to state his ultimate opinion that the barricades should have been installed and their gates locked on the day of the accident, even though such opinion was apparently based, at least in part, upon the hearsay newspaper article. Subsequently, however, plaintiffs' counsel ventured from the realm of opinion into that of fact in asking Smith whether the previous "sweep-offs" resulted in drownings. When it became apparent that Smith could answer the factual inquiry only by resorting to the newspaper article, the trial court properly forbade his response.

Plaintiffs next argue that the trial court erred in prohibiting their experts from testifying regarding an opinion that embraced the ultimate issue to be decided by the trier of fact. The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993). We find no abuse of discretion in the trial court's decision.

MCL 691.1407(2)(c); MSA 3.996(107)(2)(c) provides that a governmental employee shall be immune from tort liability for injury to persons if, inter alia, "[t]he

. . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, 'gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." In attempting to show that the individual defendants had committed gross negligence and thus were not entitled to governmental immunity, plaintiffs' counsel asked the following question of one of their expert witnesses, Douglas D'Arnall:

> Now, from your review of the overall circumstances of this case, from the aquatic safety standpoint, are you prepared to give us an opinion as to whether or not the City Manager's Office in South Haven conducted itself so recklessly as to demonstrate a substantial lack of concern as to whether an injury resulted in this case?

Defense counsel objected, contending that the question was "tantamount to asking an opinion with respect to liability." The trial court agreed and did not allow D'Arnall to answer the question.

On appeal, plaintiffs contend that their experts should have been allowed to answer the question pursuant to MRE 704, which provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, MRE 704 does not allow an expert to invade the province of the jury, and no witness is permitted to tell the jury how to decide a case. *People v Drossart*, 99 Mich App 66, 79; 297 NW2d 863 (1980). This Court in *Drossart* stated:

> [A] witness is prohibited from opining on the issue of a party's negligence or nonnegligence, capacity or non-

capacity to execute a will or deed, simple versus gross negligence, the criminal responsibility of an accused, or his guilt or innocence.

The reason for this rule is that where a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury. The same rule applies when it is an expert opinion being offered on a matter equally within the scope of a jury's common knowledge. [*Id.* at 79-80. Citations omitted.]

Similarly, the authors state in their "Practice Suggestions" in Wade, Strom & Collins, Michigan Courtroom Evidence (rev ed), Rule 704, p 370:

*Invading the Province of the Jury*

Before adoption of the MRE, the objection that a question called for an answer that invaded the province of the jury was frequently used. Now that opinion testimony may embrace the ultimate issue under rule 704, that objection is less useful, but not utterly useless. For instance, it would most likely be wrong to ask an expert whether a defendant in an auto negligence case was "negligent." Such a question seems to call for a legal conclusion that is uniquely identified with the province of the jury. Nevertheless, counsel can ask the expert who caused the accident, or who ran the red light, without fear of objection.

In the instant case, plaintiffs sought to have their experts testify that the individual defendants were grossly negligent, using the specific language of MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). We concur with the trial court's concerns that the experts' proffered testimony could have unduly invaded the province of the jury because the determination whether the individual defendants were grossly negligent constituted the primary question for jury resolution at trial. The

jury was fully competent to make this determination without the opinion of plaintiffs' expert witnesses.

In support of their argument that the proffered expert opinion should have been admitted, plaintiffs rely heavily on the case of *People v Robinson*, 417 Mich 231; 331 NW2d 226 (1983). In that case, the trial court precluded the defendant's expert witness from giving his opinion regarding whether the victim died from "grossly erroneous" medical treatment. The Michigan Supreme Court reversed, holding that the expert's opinion did not concern the guilt of the defendant, but the nature of the victim's medical care and that the "admissibility of such expert opinion is not subject to challenge on the ground that the ultimate determination of guilt or innocence may well turn on whether that expert opinion is believed or disbelieved." *Id.* at 234-235. We find *Robinson* distinguishable from the instant case because in that case the expert was never requested to invade the province of the jury. In that case, the testimony of a medical expert was helpful to the jury's determination whether the victim received proper medical care. In the instant case, however, the jury did not need the opinion of an expert to determine the central question before it: whether the individual defendants were grossly negligent. Accordingly, we find that *Robinson* does not provide relevant authority for this case and we find that the trial court did not abuse its discretion in refusing to admit the proffered evidence.

In plaintiffs' final issue, they argue that the trial court violated MRE 202(b) in refusing to take judicial notice of certain Michigan statutes. While we agree that the trial court erred in failing to take judicial notice of the statutes, such error was harmless.

In their trial exhibit 5, plaintiffs attached copies of two Michigan statutes dealing with the jurisdiction of local authorities over piers such as the one at issue in this case. Near the conclusion of the trial, plaintiffs requested that the trial court take judicial notice of the statutes. The trial court refused this request on the ground that the statutes had already been admitted into evidence by way of the trial exhibit and the court did not wish to "encumber" the jury with an argument of law at that late time. The court further noted that defendants were not contesting the validity of the laws.

Pursuant to MRE 202(b), the trial court was required to take judicial notice of the statutes. "Judicial notice of a Michigan statute is mandatory in this state." *American Casualty Co v Costello*, 174 Mich App 1, 8; 435 NW2d 760 (1989). However, because (1) the statutes were admitted into evidence at trial and were given to the jury for its consideration, (2) the jury was correctly instructed regarding the law, and (3) the statutes were at best only marginally relevant to the issues, we find that reversal is unwarranted. Thus, the trial court's refusal to take judicial notice of the Michigan statutes was harmless error. MCR 2.613(A).

Because we find that no errors requiring reversal occurred during trial, we affirm the jury's verdict of no cause of action with regard to plaintiffs' claim of gross negligence against the individual defendants. However, we will briefly address defendants' issues on cross appeal.

On cross appeal, defendants argue that they were entitled to a directed verdict on the basis of governmental immunity. We find that the trial court properly

denied defendants' motion. Defendants based their motion on the immunity provided by MCL 691.1407(5); MSA 3.996(107)(5) (absolute immunity from tort liability for the highest appointive executive officials of all levels of government). However, defendants failed to raise this defense anytime before plaintiffs had rested. Although defendants earlier had averred that plaintiffs' claim was barred by "immunity granted by law," at no time before their motion for a directed verdict did defendants indicate that they would rely on MCL 691.1407(5); MSA 3.996(107)(5). Accordingly, we find that plaintiffs could not have been prepared to refute the allegation that the individual defendants were entitled to absolute immunity. Having failed to raise the issue until the time plaintiffs rested, defendants may not now use this ground to challenge the trial court's denial of their motion for a directed verdict.

However, on cross appeal, defendants also argue that the trial court should have granted their motion for a directed verdict on the basis of plaintiffs' failure to present any evidence of the requisite special relationship between the individual defendants and the deceased. Defendants thus argue that plaintiffs' gross negligence claim was barred by the "public-duty doctrine." We agree and would reverse if the jury had not already decided in favor of these defendants.

An essential element of a negligence claim is the existence of a duty owed by the defendant to the plaintiff. *Chivas v Koehler*, 182 Mich App 467, 475; 453 NW2d 264 (1990). Whether a duty exists is a question of law for the court. *Id.* If the evidence presented by a plaintiff is insufficient to establish a prima facie case, the motion for a directed verdict should be

granted. *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995). In *Harrison v Director of Dep't of Corrections*, 194 Mich App 446, 456-460; 487 NW2d 799 (1992), this Court held that a public official is regarded as owing his duty to the public in general and not to a specific individual. This rule applies unless a special relationship exists between the official and the individual such that performance by the official would affect the individual in a manner different in kind from the way performance would affect the public. *Id.* At trial, plaintiffs failed to demonstrate that the decedent had any contact with the individual defendants or that plaintiffs relied on any explicit assurances from defendants. In short, plaintiffs failed to present any evidence of a "special relationship" that would create a duty by defendants to the decedent. Accordingly, under the public-duty doctrine, defendants' motion for a directed verdict with regard to plaintiffs' gross negligence claim should have been granted.

Affirmed in part, reversed in part, and remanded for trial against defendant City of South Haven in accordance with this opinion.