McGOLDRICK v HOLIDAY AMUSEMENTS, INC
McGOLDRICK v DEPARTMENT OF CONSUMER AND INDUSTRY
SERVICES

Docket Nos. 214466, 215063. Submitted March 7, 2000 at Lansing. Decided
August 22, 2000, at 9:10 A.M.

Ronald K. McGoldrick, as personal representative of the estate of
Christopher K. McGoldrick, deceased, brought an action in the
Grand Traverse Circuit Court against Holiday Amusements, Inc.,
doing business as Mount Holiday, and Kirby Pettyjohn, seeking
damages for the decedent's death, which occurred after the dece-
dent skied into a tension pole that supported part of the rope tow
at the ski facility run by the corporate defendant. The plaintiff
brought a similar action in the Court of Claims against the Michi-
gan Department of Consumer and Industry Services, the Michigan
Department of Licensing and Regulation, and the Michigan Ski
Area Safety Unit. The Court of Claims action was consolidated with
the circuit court action. The court, Thomas G. Power, J., entered
orders in the respective actions granting summary disposition for
all the defendants. The plaintiff appealed separately the orders in
the two actions. The appeals were consolidated.

The Court of Appeals *held*:

1. The court granted summary disposition for defendant Holiday
Amusements on the basis that the plaintiff's claim was barred by
the immunity from liability granted by the Ski Area Safety Act
(SASA), MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.* Although the SASA
grants ski area operators immunity from liability for many injuries
incurred by persons engaged in skiing activities and places the bur-
den of certain dangers on the skiers rather than the ski area opera-
tors, the SASA does provide that ski area operators are liable for
damages resulting from their violation of the provisions of the SASA.

2. Although the plaintiff asserts that defendant Holiday is liable
because it violated provisions of the SASA, the plaintiff cites no spe-
cific violation of the SASA, but rather argues that liability arose from
defendant Holiday's violation of the safety regulations set forth in
the American National Standard for Passenger Tramways (ANSI
Standards). However, the SASA does not provide for an exception to
a ski area operator's immunity from liability for a violation of the

ANSI Standards. Accordingly, because the plaintiff failed to show any violation of the statutory mandates of the SASA, a violation of the ANSI Standards, if any, does not serve to defeat defendant Holiday's statutory immunity from liability.

3. The plaintiff's assertion that defendant Holiday is not immune from liability because the tension pole that the plaintiff's decedent skied into is not one of the enumerated risks that skiers assume under the SASA is without merit. Subsection 22(2) of the SASA, MCL 408.342(2); MSA 18.483(22)(2), provides that skiers accept the obvious and necessary dangers that inhere in the sport of skiing, including injuries resulting from collisions with ski lift towers and their components. Subsection 2(h) of the SASA, MCL 408.322(h); MSA 18.483(2)(h), defines "ski lift" to include "a rope tow." Clearly, the tension pole for the rope tow is a component of the rope tow and is thus one of the dangers specifically referred to in subsection 22(2). Accordingly, because injuries resulting from a collision with a rope tow tension pole is one of the dangers statutorily assumed by skiers, the plaintiff's assertions with respect to padding, lighting, and others conditions of the tension pole are irrelevant.

4. There is nothing in the SASA to suggest that a higher standard of care is placed on ski area operators or that less risk is assumed by a skier where the skier is a minor. Subsection 22(2) clearly states that "[e]ach person who participates in the sport of skiing accepts the dangers that inhere in that sport." Had the Legislature intended to impose a different standard of care with respect to minors, it would have done so. The decision whether such an exception is appropriate is for the Legislature, not for the courts.

5. The plaintiff failed to raise on appeal any issues with respect to the defendant state agencies; accordingly, any issues regarding the defendant state agencies have been waived.

6. The plaintiff argues on appeal that the trial court erred in determining that defendant Pettyjohn, the state inspector who inspected the rope tow and issued the permit allowing the use of the rope tow, owed no duty to the plaintiff's decedent. The question of duty is a question of law for the court to decide. The trial court determined that defendant Pettyjohn owed no duty to the plaintiff's decedent because of the public-duty doctrine, relying on the four-part special-relationship test that was adopted by the Supreme Court in *White v Beasley*, 453 Mich 308 (1996). Although the *White* Court specifically indicated that it was not deciding whether the four-part special-relationship test should be applied with respect to governmental employees other than police officers, the Court of Appeals on a number of occasions has applied the public-duty doctrine in cases involving governmental employees

other than police officers in situations similar to the present case, making it unnecessary to decide whether the special-relationship test should be applied in this case. Accordingly, the trial court, in determining whether defendant Pettyjohn owed a duty to the plaintiff's decedent, properly considered the public-duty doctrine.

7. The public-duty doctrine provides that if the duty of a public official arises from public authority, the duty is for the benefit of the general public and not to a specific individual, and the failure of the public official to perform that duty must be redressed, if at all, in some form of public prosecution, not in a tort action brought by a private individual. Defendant Pettyjohn's duty to inspect ski areas and ski lifts arose from official authority, and the duty is for the benefit of the public at large. Accordingly, the trial court properly held that defendant Pettyjohn's inspection of the rope tow gave rise to no individual duty of care applicable to the plaintiff's decedent and that defendant Pettyjohn was entitled to summary disposition.

Affirmed.

1. NEGLIGENCE — SKI AREA SAFETY ACT — ASSUMPTION OF RISK — IMMUNITY FROM LIABILITY.

The Ski Area Safety Act grants ski area operators immunity from liability for many injuries incurred by persons engaged in skiing activities and places the burden of certain dangers on the skiers rather than the ski area operators, but provides that ski area operators are liable for damages resulting from their violation of the provisions of the Ski Area Safety Act (MCL 408.342[2]; MSA 18.483[22][2]).

2. NEGLIGENCE — SKI AREA SAFETY ACT — IMMUNITY FROM LIABILITY — AMERICAN NATIONAL STANDARDS INSTITUTE.

The Ski Area Safety Act does not provide for an exception to the act's grant to ski area operators of immunity from liability for injuries that result from open and obvious dangers that inhere in the sport of skiing where an injury arises out of an act that would constitute a violation of a safety standard adopted by the American National Standards Institute but which would not constitute a violation of a specific provision of the act itself (MCL 408.342[2]; MSA 18.483[22][2]).

3. NEGLIGENCE — SKI AREA SAFETY ACT — ASSUMPTION OF RISK — IMMUNITY FROM LIABILITY — MINORS — DUTY OF CARE.

There is nothing in the Ski Area Safety Act that places a higher standard of care on ski area operators, that reduces the risk assumed by a skier, or that limits the statutory immunity from liability afforded by the act to ski area operators where the skier is a minor (MCL 408.342[2]; MSA 18.483[22][2]).

*Dingeman, Dancer & Christopherson, P.L.C.* (by *Mark R. Dancer* and *Brian L. Johnson*), for the plaintiff.

*Robert L. Bunting* (*Robert Charles Davis*, of Counsel), for Holiday Amusements, Inc.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark E. Donnelly*, Assistant Attorney General, for state agencies and Kirby Pettyjohn.

Before: SMOLENSKI, P.J., and MARKEY and O'CONNELL, JJ.

MARKEY, J. In these consolidated cases, plaintiff, Ronald McGoldrick, as personal representative of the estate of Christopher McGoldrick, deceased, appeals by right the trial court's orders granting summary disposition in favor of defendants. Plaintiff's decedent, Christopher McGoldrick, was killed while skiing after he collided with a tension pole that supported part of the apparatus for a rope tow at defendant Holiday Amusements, Inc., doing business as Mount Holiday. We affirm.

Plaintiff first argues that the trial court erred in granting summary disposition to defendant Holiday because defendant Holiday violated the Ski Area Safety Act (SASA), MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.* We disagree. On appeal, the trial court's grant or denial of summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). This Court reviews the entire record to determine whether the moving party was entitled to judgment as a matter of law. *Id.* Although the trial court failed to state under which subrule it was granting

summary disposition, we believe that summary disposition was granted under MCR 2.116(C)(7), because the claim is barred by immunity granted by law. Under MCR 2.116(C)(7), any supporting evidence, including affidavits, depositions, and admissions, may be considered. *Maiden, supra* at 119.

Subsection 22(2) of the SASA, MCL 408.342(2); MSA 18.483(22)(2), generally grants ski area operators immunity from liability and places the burden of certain dangers on skiers rather than ski resort operators. *McCormick v Go Forward Operating Ltd Partnership*, 235 Mich App 551, 553-554; 599 NW2d 513 (1999); *Schmitz v Cannonsburg Skiing Corp*, 170 Mich App 692, 695; 428 NW2d 742 (1988). The SASA also provides that ski operators are required to do certain things in operating ski areas, including, for example, marking ski runs, slopes, and trails with appropriate symbols and placing notices if snowmaking operations are being performed. MCL 408.326a; MSA 18.483(6a). The SASA further states that ski area operators shall be liable for loss or damage if they violate the SASA. MCL 408.344; MSA 18.483(24).

In the present case, although plaintiff asserts that defendant Holiday is liable because it violated statutory provisions contained in the SASA, plaintiff does not cite any specific violations of the SASA. Plaintiff's appellate brief only discusses violations of safety regulations set forth in the American National Standard for Passenger Tramways (ANSI Standards). For example, plaintiff states that defendant Holiday violated the ANSI Standards by failing to construct a fence or guard around the tension pole with which plaintiff's decedent collided, by failing to place the tension pole in an appropriate location, and by failing to ade-

quately light the tension pole. The SASA addresses none of these; consequently, these allegations are not violations of the SASA. In *McCormick, supra* at 555-556, this Court recently addressed the issue regarding whether immunity granted to ski area operators pursuant to the SASA should apply where the operator does not comply with ANSI Standards.[1]

Like plaintiff in the instant case, the plaintiffs in *McCormick* relied on this Court's decision in *Dale v Beta-C, Inc*, 227 Mich App 57; 574 NW2d 697 (1997), in arguing that immunity should not apply where the ski area operator does not comply with the ANSI Standards. *McCormick, supra* at 555. In affirming the trial court's grant of summary disposition to the defendant ski area operator, this Court determined that the plaintiffs' reliance on *Dale* was misplaced. *Id.* at 556. This Court noted that *Dale* specifically considered the provisions of the Roller Skating Safety Act, MCL 445.1721 *et seq.*; MSA 18.485(1) *et seq.*, and the statutory requirement that roller skating rink operators comply with safety standards published by the rink operators association, and that rink operators are lia-

---

[1] We note that plaintiff relies on this Court's decision in *Godde v Bittersweet Ski Resort, Inc*, unpublished opinion per curiam of the Court of Appeals, issued October 26, 1999 (Docket No. 210676), where a panel of this Court reversed the circuit court's affirmance of an arbitrator's decision that granted immunity under the SASA to the defendant ski area operator. Although unpublished opinions are not binding precedent, *Watson v Bureau of State Lottery*, 224 Mich App 639, 648; 569 NW2d 878 (1997), a distinction between the instant facts and *Godde* should be noted because plaintiff states that *Godde* is "precisely on point" with the instant case. In *Godde*, this Court reversed because the arbitrator had failed to consider the plaintiff's allegation that the defendant had specifically violated the SASA by failing to mark the entrance to a closed trail with an appropriate symbol pursuant to subsections 6a(d) and (e) of the SASA, MCL 408.326a(d), (e); MSA 18.483(6a)(d), (e). In the present case, plaintiff does not cite any violations of the SASA, only the ANSI Standards.

ble for civil damages resulting from a violation of the act. *McCormick, supra* at 556. The *McCormick* Court held:

> In the case at bar, there are no similar provisions in the SASA. That is, the SASA does not provide for the adoption of safety standards by outside agencies, nor does it provide for an exception to immunity for violation of any such standards. Whether the statute should provide for an exception to immunity upon the violation of a safety standard is a decision for the Legislature to make, not this Court. Because the Legislature has not chosen to do so, we decline to do so ourselves. [*Id.*[2]]

Thus, as stated in *McCormick*, because the SASA does not provide for an exception to the ski operator's immunity for a violation of the ANSI Standards and because plaintiff has failed to indicate any violation of the statutory provisions contained in the SASA, plaintiff's argument is without merit.

Next, plaintiff argues that the tension pole that plaintiff's decedent skied into is not an enumerated risk under the SASA and that the trial court therefore erred in granting summary disposition to defendant Holiday. We disagree. A trial court's grant of summary disposition is reviewed de novo on appeal. *Maiden, supra* at 118. Statutory interpretation is a question of law that is reviewed de novo on appeal. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casu-*

---

[2] Recently, in *Kent v Alpine Valley Ski Area, Inc,* 240 Mich App 731, 744, n 5; 613 NW2d 383 (2000), this Court addressed the holding in *McCormick* and stated that the "SASA arguably *does* provide for an exception to immunity for violation of [the ANSI] standards . . . ." However, this language contained in a footnote of the *Kent* opinion is obiter dictum and does not have the force of an adjudication because it was not essential to the determination of the case. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 597-598; 374 NW2d 905 (1985).

*alty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The issue regarding whether a particular set of circumstances falls within the risks and dangers enumerated in subsection 22(2) of the SASA is a question of law. See *Schmitz, supra* at 696.

A ski area operator's immunity from liability is granted in subsection 22(2) of the SASA:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, *injuries which can result from* variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; *collisions with ski lift towers and their components*, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment. [Emphasis added.]

See, also, *McCormick, supra* at 553-554. Basically, plaintiff is asserting that the tension pole[3] was not obvious and necessary and is not a component of a "ski lift tower" under subsection 22(2) of the SASA. We disagree.

The clear language of the SASA establishes that plaintiff's injury comes within the immunity provisions. The statute plainly states that a collision with "ski lift towers and their components" comes within the dangers that are necessary and obvious. Further, the SASA explicitly states that the definition of "ski lift" includes "a rope tow." MCL 408.322(h); MSA 18.483(2)(h). Plaintiff does not dispute that the metal

---

[3] Plaintiff describes the tensioning structure attached to the rope tow as consisting of "two vertical small-diameter metal poles, approximately three inches in diameter, connected to a third metal horizontal cross bar located approximately two feet above the ground."

pole with which plaintiff's decedent collided was part of a tensioning structure associated with a rope tow that was designed to take slack out of the rope tow. This pole is logically a component of the rope tow in question, which is included in the definition of "ski lift" under the SASA. Because the statutory language is clear, judicial construction is not permitted. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996).

Although plaintiff emphasizes that the tension pole was unpadded, not readily visible, and obsolete, the statute does not place any restrictions in stating that immunity is granted for injuries arising from collisions with ski lift towers and their components. Compare *McCormick, supra* at 554 & n 2, where this Court distinguished between restrictions being placed on immunity for injuries arising from collisions with snow-making and snow-grooming equipment, which subsection 22(2) of the SASA clearly required that such equipment be properly marked or plainly visible in order for immunity to apply, and no restrictions being placed on immunity for injuries arising from collisions with other skiers. In addition, although plaintiff emphasizes the word "tower" in subsection 22(2) of the SASA and states that "tower" does not include the tension pole in question, plaintiff also argues that the word "tower" "means those structures which support the devices which carry passengers." Contrary to plaintiff's assertion, the tensioning pole is clearly a structure that supports the device (i.e., rope tow in this case) that carries passengers; consequently, plaintiff's attempt to distinguish between the tower and the tension pole fails to convince us. Therefore, because plaintiff's decedent's injury arose from his

collision with a component of a ski lift tower, it comes within the immunity provision of the statute. *McCormick, supra.* The padding, lighting, and other conditions of the tension pole as stated by plaintiff are irrelevant. Whether these conditions *should* present an exception to the immunity provision of the SASA is a matter for the Legislature to determine, not the courts. *Id.* at 555.

Plaintiff also argues that, as a minor, plaintiff's decedent was skiing with an appropriate degree of care and did not assume the risk of the pole with which he collided. Plaintiff also asserts that defendant Holiday owed plaintiff's decedent a heightened duty of care because he was a minor. We disagree. Statutory interpretation is a question of law that is reviewed de novo on appeal. *Oakland Co Bd of Rd Comm'rs, supra.*

Plaintiff's arguments must fail because, again, they are contrary to the clear language of the SASA.[4] The SASA statutorily limits the liability of ski area operators while promoting skier safety. In enacting the SASA,

> [t]he Legislature perceived a problem with respect to the inherent dangers of skiing and the need for promoting safety, coupled with the uncertain and potentially enormous ski area operators' liability. Given these competing interests, the Legislature decided to establish rules in order to

---

[4] We could not find any Michigan cases interpreting the effect of the immunity provision, subsection 22(2) of the SASA, on minors. However, in *Shukoski v Indianhead Mountain Resort, Inc,* 166 F3d 848 (CA 6, 1999), although the specific issue regarding minors was not addressed, the court held that a minor who was injured because of variations in the terrain while snowboarding at the defendant ski resort had assumed the risk pursuant to subsection 22(2) of the SASA, and, thus, that the immunity provision of the SASA applied.

regulate the ski operators and to set out ski operators' and skiers' responsibilities in the area of safety. As part of this reform, the Legislature has decided that all skiers assume the obvious and necessary dangers of skiing. This is a rational solution for limiting ski area operators' liability and promoting safety. [*Grieb v Alpine Valley Ski Area, Inc*, 155 Mich App 484, 488-489; 400 NW2d 653 (1986) (citation omitted).]

With respect to the SASA's purpose of limiting the ski area operator's liability, subsection 22(2) clearly states that "*[e]ach person* who participates in the sport of skiing accepts the dangers that inhere in that sport . . . ." (Emphasis added.) In providing that skiers assume certain risks while skiing, subsection 22(2) of the SASA clearly does not distinguish between adult and minor skiers. Moreover, contrary to plaintiff's assertion, no provision of the SASA imposes a greater responsibility on ski area operators with respect to minors. Indeed, the SASA makes no mention whatsoever with respect to the ages of skiers. See MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.*

As previously discussed, subsection § 22(2) clearly provides that an injury resulting from a collision with a component of a ski lift tower (i.e., component of a rope tow tower in the present case) is an obvious and necessary danger assumed by skiers. See *Hakari v Ski Brule, Inc*, 230 Mich App 352, 358; 584 NW2d 345 (1998), quoting *Grieb, supra* at 486. Thus, contrary to plaintiff's argument, the decedent assumed the risk of the pole. Had the Legislature intended to impose a greater standard of care on ski area operators with respect to minors, it would have done so. "The decision whether such provisions or exceptions are necessary and appropriate is for the Legislature to determine, not the courts." *McCormick, supra* at 555.

With respect to plaintiff's assertions that the minor decedent was skiing with an appropriate degree of care and that any question regarding whether the decedent had maintained control of his speed should be left to the jury, these assertions are without merit. In making these allegations based on common-law negligence principles, plaintiff has overlooked "the plain and unambiguous wording of § 22(2) that the Legislature intended to place the burden of certain risks or dangers on skiers, rather than ski resort operators." *Schmitz, supra* at 695. Subsection 22(2) of the SASA "renders the reasonableness of the skiers' . . . behavior irrelevant." *Schmitz, supra* at 696; see, also, *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731, 743; 613 NW2d 383 (2000).

Plaintiff also argues that the trial court erred in determining that defendant Pettyjohn, the inspector who inspected the rope tow in question and issued a permit for the use of the rope tow, owed no duty to plaintiff's decedent. We disagree. "The issue of duty is a question of law for the court to decide." *Hakari, supra* at 359. If no duty exists, summary disposition is proper. *Eason v Coggins Memorial Christian Methodist Episcopal Church*, 210 Mich App 261, 263; 532 NW2d 882 (1995). Although the trial court failed to state under which subrule it was granting summary disposition to defendant Pettyjohn, we believe that summary disposition was granted under MCR 2.118(C)(8) (failure to state a claim). See *Maiden, supra* at 119; *Eason, supra; Massey v Dep't of Corrections*, 182 Mich App 238, 242; 451 NW2d 869 (1990).

First, with respect to the state agency defendants, it appears that plaintiff did not raise on appeal the issues of nuisance, respondeat superior, and vicarious

liability raised below. Further, although plaintiff requests on appeal that the orders of the trial court be reversed, plaintiff sets forth no arguments with respect to the agency defendants in his "Statement of Questions Involved." Thus, any issues regarding the state agency defendants have been waived. *Lansing v Hartsuff*, 213 Mich App 338, 351; 539 NW2d 781 (1995); *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995).

With regard to defendant Pettyjohn, we conclude that the trial court properly determined that defendant Pettyjohn owed no duty to plaintiff's decedent.[5] Plaintiff claims that defendant Pettyjohn was grossly negligent in inspecting the rope tow in question and in issuing a permit because the rope tow and its components violated various ANSI Standards. To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993).

In the present case, the trial court relied on a four-part special-relationship test set forth in *Cuffy v City of New York*, 69 NY2d 255, 260; 513 NYS2d 372; 505 NE2d 937 (1987), as adopted by our Supreme Court in *White v Beasley*, 453 Mich 308, 321 (BRICKLEY, J.), 325-326 (BOYLE, J.); 552 NW2d 1 (1996), in determining that defendant Pettyjohn owed no duty to plaintiff's decedent under the public-duty doctrine.[6] However, in

---

[5] Although defendant Pettyjohn combines the defenses of no duty and governmental immunity in his appellate brief, these are actually two separate defenses. See *Smith v Kowalski*, 223 Mich App 610, 613-619; 567 NW2d 463 (1997).

[6] The four-part test is comprised of the following elements:

*White*, the Supreme Court adopted the four-part *Cuffy* test "at least when applied to police officers," and stated that it was not deciding whether the same test should be applied to other government employees. *Id.* at 315, n 3, 321 (BRICKLEY, J.). We conclude that this Court need not decide whether the four-part *Cuffy* test should apply in the present case with respect to defendant Pettyjohn, who is not a police officer, because other Michigan cases have applied the public-duty doctrine in cases involving government employees other than police officers and situations similar to the instant case.[7] See, e.g., *Smith v Kowalski*, 223 Mich App 610, 613-615; 567 NW2d 463 (1997) (correctional officers and guards); *Koenig v South Haven*, 221 Mich App 711, 729-730; 562 NW2d 509 (1997), rev'd in part on other grounds 460 Mich 667; 597 NW2d 99 (1999) (city officials); *Summers v Detroit*, 206 Mich App 46, 50-51; 520 NW2d 356 (1994) (city officials and employees); *Massey, supra* at 240-242 (Department of Corrections deputy director); *Hobrla v Glass*, 143 Mich App 616, 624-626; 372 NW2d 630 (1985) (Secretary of State employees).

---

"(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;

"(2) knowledge on the part of the municipality's agent that inaction could lead to harm;

"(3) some form of direct contact between the municipality's agents and the injured party; and

"(4) that party's justifiable reliance on the municipality's affirmative undertaking . . . ." [*White, supra* at 320, quoting *Cuffy, supra* at 260.]

[7] We note that even if we were to apply the four-part *Cuffy* test as adopted in *White*, we still would conclude that the trial court correctly determined that the *Cuffy* factors had not been satisfied. No evidence existed that there was "direct contact" between the decedent and defendant Pettyjohn.

The validity of the public-duty doctrine was recently affirmed by our Supreme Court in *White*. The doctrine provides

> "[t]hat if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages." [*White, supra* at 316, quoting 2 Cooley, Torts (4th ed), § 300, pp 385-386.]

If a duty of a public official arises from official authority, the duty is for the benefit of the general public and not to a specific individual. *Koenig, supra* at 730; *Massey, supra* at 241. This rule applies unless the public official's performance would affect the individual in a manner different in kind from the way the public official's performance would affect the general public. *Koenig, supra; Massey, supra.*

There is no dispute that defendant Pettyjohn's duty to inspect the ski areas and lifts arose from official authority. MCL 408.326(1); MSA 18.483(6)(1) of the SASA provides for safety inspections of all ski areas and lifts. Thus, because the duty arose from official authority, the duty is for the benefit of the public at large. *Massey, supra.* Moreover, MCL 408.326(1); MSA 18.483(6)(1) specifically states that the duty of inspection is owed to the "general public." There is no mention of specific individuals in the SASA. Although plaintiff argues to the contrary, no duty was owed to the individual decedent. "Any duty owed by [defendant Pettyjohn] was for the benefit of the general public; there has been no showing that performance of that

duty would have affected the decedent differently from the general public." *Summers, supra* at 51.

This result is supported by *Hobrla, supra,* a case relied on by the trial court in the present case. In *Hobrla, supra* at 620, the plaintiff was injured in a motor vehicle accident after she was struck by a driver whose license had been suspended, but who had been mistakenly issued a driver's license by the defendant employee of the Secretary of State. This Court concluded that the duty owed by the defendant state employees was a duty to the public, not to any particular individual. Hence, the individual defendants were not liable for any damages that allegedly arose from the issuance of the driver's license. *Id.* at 625-626. Similarly, as previously discussed, the duty owed by defendant Pettyjohn to inspect ski lifts was a duty owed solely to the "general public."

We affirm.