*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRYSTAL COOPER, Individually, and as Personal Representative of the ESTATE OF LAMAR D. MITCHELL and the ESTATE OF ZYAIRE MITCHELL,

UNPUBLISHED
May 14, 2025
11:16 AM

Plaintiff-Appellee,

v

No. 368583
Genesee Circuit Court
LC No. 22-118014-NO

CITY OF FLINT and FLINT FIRE DEPARTMENT,

Defendants,

and

SERGEANT DANIEL SNIEGOCKI and FIREFIGHTER MICHAEL ZLOTEK,

Defendants-Appellants.

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendants-appellants, Sergeant Daniel Sniegocki and Firefighter Michael Zlotek, appeal as of right the circuit court's order denying their motion for summary disposition under MCR 2.116(C)(7). Defendants[1] were firefighters for the city of Flint. Plaintiff brought this action after her two minor sons, Lamar D. Mitchell and Zyaire Mitchell, died as a result of a house fire to which defendants responded. Plaintiff contends that her sons' deaths were caused by defendants' grossly-negligent conduct. Defendants argue that plaintiff's claims against them must be dismissed because they had no duty to plaintiff's decedents, there is no question of fact that their conduct was not grossly negligent, and plaintiff's evidence does not and cannot create a question

---

[1] The city of Flint and the Flint Fire Department are also defendants in this action, but they are not parties to this appeal. This opinion uses "defendants" to refer to only Sniegocki and Zlotek.

of fact whether defendants were the proximate cause of the decedents' injuries and subsequent deaths. We disagree with all of defendants' arguments and therefore affirm.

## I. BACKGROUND

This case arose from a house fire that took place in May 2022. Defendants were among the first firefighters who responded to the scene, and they were ordered to perform a primary search of the house. Defendants stated in their respective postfire reports that, before searching the house, they had been informed that there might be persons trapped inside, but they found no entrapped victims after they searched the first and second floors of the house.

Approximately seven minutes after defendants' search, a second crew was ordered to go to the second floor and open windows, remove an air-conditioning unit, and conduct secondary searches. This crew located Lamar and Zyaire in one of the second-floor bedrooms. Lamar was face-down on the floor, and Zyaire was face-down with his body half on a bed. Lamar and Zyaire were immediately taken to Henry Ford Hospital, where they both died a few days later.

The chief of the Flint Fire Department, Raymond Barton, investigated the fire with emphasis on defendants' performance. He prepared a report that included a statement from the lieutenant who led the crew that discovered the decedents during the secondary search. The lieutenant concluded that defendants could not have entered the bedroom where the decedents were found and missed them, and determined that defendants provided false statements about their search. After conducting his own independent investigation at the site of the fire and reviewing defendants' incident write-up reports, Chief Barton likewise concluded that defendants made false statements in their reports because, if defendants had searched the second floor in the way they described, they would have found the decedents. The chief determined that, contrary to defendants' representations, they "neglected to perform the tasks of completing a sweep of the second floor," which led to a delay in finding the decedents. On the basis of his findings, Chief Barton terminated defendants' employment with the Flint Fire Department.

Plaintiff was appointed as personal representative of the decedents' estates and commenced this action. Plaintiff's amended complaint alleged in pertinent part that defendants were grossly negligent when they failed to properly search the second-floor bedroom where the decedents were found and then "deliberately misrepresented the negative results of their purported search," which delayed the secondary search that found the decedents. The amended complaint further alleged that defendants' grossly-negligent conduct was the proximate cause of decedents' deaths.

In lieu of an answer, defendants and the city of Flint moved for summary disposition under MCR 2.116(C)(7) and (C)(8). Defendants claimed immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., arguing that they owed no duty to plaintiff's decedents, the evidence established that defendants were not grossly negligent, and plaintiff could only speculate whether defendants' conduct was "the" proximate cause of decedents' deaths.

In response, plaintiff highlighted how defendants' motion was contesting the factual sufficiency of plaintiff's arguments, and she contended that such a motion was premature because discovery had not yet begun. Plaintiff asked the trial court to hold defendants' allegedly-premature motion in in abeyance pending discovery. If the court decided to address the merits of defendants'

arguments, plaintiff contended that defendants were engaged in an affirmative act—"they were ordered to conduct a primary search of the second floor"—and they had a duty to perform this affirmative act in a nonnegligent manner. Plaintiff further contended that defendants had a duty to not engage in conduct that made the situation worse, and that they breached this duty by lying about searching the second floor, thereby delaying the secondary search that found the decedents. As for whether defendants were grossly negligent, plaintiff highlighted the conclusion of Chief Barton's report that defendants had lied about how they searched the second floor of plaintiff's home, which created a question of fact whether defendants were grossly negligent. Turning to proximate cause, plaintiff noted that she alleged in her amended complaint that defendants' gross negligence was the proximate cause of decedents' deaths, and defendants had not provided any evidence rebutting this assertion.

The trial court agreed with plaintiff's argument that defendants' motion was premature, so it entered an order holding its decision on defendants' motion in abeyance pending discovery.

Defendants filed a delayed application for leave to appeal this decision, which this Court granted. This Court then held that the trial court erred by holding defendants' motion in abeyance pending completion of discovery because a motion under MCR 2.116(C)(8) "must be decided on the pleadings alone." *Mitchell Estate v City of Flint*, unpublished order of the Court of Appeals, entered September 20, 2023 (Docket No. 366898). The panel further held that, while the trial court could properly deny defendants' motion under MCR 2.116(C)(7) if it concluded that discovery was needed, the court erred by postponing its decision. Unpub order (Docket No. 366898). This Court ordered the trial court on remand to "enter an order that either grants or denies defendants' motion for summary disposition." *Id.*

On remand, the trial court denied defendants' motion for summary disposition, holding that the pleadings and documentary evidence, construed in a light most favorable to plaintiff, did not clearly establish defendants' entitlement to governmental immunity.

This appeal followed.

## II. JURISDICTION

Before addressing defendants' substantive appeal, plaintiff raises an issue with this Court's jurisdiction. Plaintiff acknowledges that this Court has jurisdiction over an appeal as of right filed by an aggrieved party from a "final judgment or final order," MCR 7.203(A)(1), which includes "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7)," MCR 7.202(6)(a)(v). Plaintiff also correctly notes that such an appeal is "limited to the portion of the order" denying governmental immunity. MCR 7.203(A)(1). Relying on this latter portion of MCR 7.203(A)(1), plaintiff argues that defendants' duty argument is not properly before this Court because that issue does not concern governmental immunity.

In support of this argument, plaintiff cherry-picks quotes from cases discussing the public-duty doctrine and its relation to governmental immunity. See *Jones v Wilcox*, 190 Mich App 564, 569-570; 476 NW2d 473 (1991); *McGoldrick v Holiday Amusements, Inc*, 242 Mich App 286, 298 n 5; 618 NW2d 98 (2000); *White v Beasley*, 453 Mich. 308, 323; 552 NW2d 1 (1996) (opinion by

BRICKLEY, C.J.). The plurality opinion in *White* adopted the following definition of the public-duty doctrine:

> [t]hat if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. [*Id*. at 316 (quotation marks and citation omitted).]

The cases on which plaintiff relies merely note that the public-duty doctrine is not a doctrine of governmental immunity. See, e.g., *Jones*, 190 Mich App at 570 ("The doctrine of governmental immunity has not supplanted the public duty doctrine."); *White*, 453 Mich at 323 (opinion by BRICKLEY, C.J.) (holding that "the public-duty doctrine is a doctrine of tort law," so it was "consistent" with the GTLA).[2]

None of the cases on which plaintiff relies support plaintiff's argument that whether a government employee owed a plaintiff a duty is not part of determining whether the government employee was entitled to governmental immunity under the GTLA. Indeed, this Court has repeatedly stated that the opposite is true. See *Dougherty v City of Detroit*, 340 Mich App 339, 346-347; 986 NW2d 467 (2021) ("Under the GTLA, a governmental employee is entitled to governmental immunity and, thus, summary disposition if the plaintiff fails to establish that the employee owed a duty in tort."); *Downs v Saperstein Assoc Corp*, 265 Mich App 696, 699; 697 NW2d 190 (2005) ("Summary disposition of a gross negligence claim pursued under MCL 691.1407(2) is warranted if the plaintiff fails to establish a duty in tort."). Because none of the cases that plaintiff cites clearly support plaintiff's argument, and because plaintiff's argument is contradicted by this Court's pronouncements in published opinions, we conclude that defendant's duty argument is properly before this Court as part of defendant's appeal as of right from the trial court's order denying defendants' claim for governmental immunity under MCR 2.116(C)(7). See MCR 7.203(A)(1); MCR 7.202(6)(a)(v).

## III. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 179; 934 NW2d 674 (2019). Defendants moved for summary disposition under MCR 2.116(C)(7). A motion submitted under MCR 2.116(C)(7) can be supported by documentary evidence, which a trial court should consider when reviewing the

---

[2] When our Supreme Court limited the public-duty doctrine to only police officers, it did so in part because "the effect of the [public-duty doctrine] arguably is identical to that of governmental immunity," *Beaudrie v Henderson*, 465 Mich 124, 139 n 13; 631 NW2d 308 (2001), and the Legislature already decided the extent of a government employee's potential liability and corresponding immunity from liability in the GTLA, *id*. at 138-141. This explains why the public-duty doctrine and governmental immunity were often discussed together—the effects of the doctrines are "identical."

motion. *Clay v Doe*, 311 Mich App 359; 876 NW2d 248 (2015). When deciding a motion filed under MCR 2.116(C)(7), a trial court must accept all well-pleaded allegations in the complaint as true unless contradicted by documentary evidence. *Linden v Citizens Ins Co of Am*, 308 Mich App 89, 92; 862 NW2d 438 (2014). If, after review of the evidence, the court determines that "no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law" for the court to decide. *Mays v Snyder*, 323 Mich App 1, 25; 916 NW2d 227 (2018). See also *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).

## IV. THE GTLA

The GTLA generally grants immunity from tort liability to governmental agencies and their employees "when they are engaged in the exercise or discharge of a governmental function," subject to certain exceptions. *Ray v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017). One such exception is MCL 691.1407(2), which provides:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Governmental immunity is an affirmative defense that a defendant must "raise and prove." *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). There is no dispute that defendants' contested conduct occurred while they were acting within the scope of their authority as firefighters, and that they were discharging a governmental function at the time. At issue is whether defendants owed a duty to the decedents, whether defendants' conduct amounted to gross negligence, and whether defendants' conduct was the proximate cause of plaintiff's claimed injury.

## V. DUTY

Generally, a duty is either expressly created by statute or arises under the common law. *Dougherty*, 340 Mich App at 347. The GTLA does not create a duty, nor are firefighters "held to the public-duty doctrine imposed on police officers." *Id.* We therefore must turn to other areas of the common law to determine whether defendants owed the decedents any duty.

To determine whether a common-law duty exists, courts consider factors including "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997). "The most important factor to be considered is the relationship of the parties." *In re Certified Question from Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 505; 740 NW2d 206 (2007). "Where there is no relationship between the parties, no duty can be imposed[.]" *Id*. at 508. This is because "a duty arises out of the existence of a relationship between the parties of such a character that social policy justifies its imposition." *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004) (quotation marks and citation omitted).

The relationship between the parties need not be extensive. It is a "basic rule of the common law" that "every person engaged in the prosecution of any undertaking" has a duty "to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967). Stated differently, "if one having assumed to act, does so negligently, then liability exists as to a third party for failure of the defendant to exercise care and skill in the performance itself." *Loweke v Ann Arbor Ceiling & Partition Co*, LLC, 489 Mich 157, 171; 809 NW2d 553 (2011) (quotation marks and citation omitted). See also *Hart v Ludwig*, 347 Mich 559, 564; 79 NW2d 895 (1956) ("The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies.") (quotation marks and citation omitted).

In *Hill v Sears, Roebuck & Co*, 492 Mich 651, 654; 822 NW2d 190 (2012), the plaintiff's home was destroyed in an explosion after gas leaking from an uncapped gas line in the home caught fire. The uncapped line was located behind a dryer that the plaintiff bought and paid to have installed. *Id*. at 655-656. The plaintiff brought suit against the retailer that sold her the dryer, the delivery companies that contracted to deliver the dryer, and the installers that installed the dryer. *Id*. at 654. The plaintiff had no direct relationship with the installers—the retailer contracted with the delivery company "to perform delivery services," and that company "subcontracted the delivery and installation services to defendant installers." *Id*. at 656 n 7. The plaintiff argued, among other things, that the defendant installers "had a common-law duty to cap the gas line or warn plaintiffs of its existence." *Id*. at 662. While the Court rejected this argument, *id*. at 669-670, it nevertheless recognized that the defendant installers owed a duty to the plaintiff. The Court explained that the plaintiff and the defendant installers had a "limited relationship" in which the defendant installers undertook to install the washer and dryer in the plaintiff's home. *Id*. This gave rise to the "limited duty" by the installers to perform their undertaking—"the delivery and installation of a washer and an electric dryer"—with "due care." *Id*. at 663. In other words, the defendant installers "had an obligation to use due care when installing the appliances," *id*. at 664, or "to nonnegligently install" the washer and dryer, *id*. at 669.

While this case is factually distinguishable from *Hill* in numerous ways, we find useful insights in *Hill*'s analysis. Here, defendants were informed that there were potentially people trapped inside the decedents' home, and defendants entered the decedents' home to perform a search of the second story where the decedents were trapped. This created a limited relationship between the decedents and defendants, in which defendants had the limited duty to perform their undertaking—searching the second floor—with due care. Stated differently, once defendants assumed to act by purportedly searching the decedents' home for anyone trapped inside,

-6-

defendants had an obligation to nonnegligently conduct the search (or, more precisely, to conduct the search in a manner that was not grossly negligent).

The existence of this duty is reinforced by considering the other factors courts generally consider when imposing a common-law duty. It is readily foreseeable that someone inside a building that is on fire or was recently on fire[3] could be harmed if a firefighter fails to use due care when searching the building; the burden of conducting the search with due care is minimal[4]; and the nature of the risk presented by failing to conduct a search properly is unquestionably high. See *Murdock*, 454 Mich 53 (explaining that, to determine whether to impose a common-law duty, courts consider "the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented"). Accordingly, we hold that, when defendants undertook conducting a search of the decedents' home, they had an obligation to conduct the search in a manner that was not grossly negligent.

In arguing against this result, defendants direct this Court's attention to *Dougherty*, which is factually similar to this case. There, the plaintiff brought suit against the defendant, who was a firefighter, after the defendant searched the plaintiff's home following a fire and "did not see the body" of the plaintiff's son. *Dougherty*, 340 Mich App at 342-343. The plaintiff searched for his son for five days until he discovered his son's body "in the kitchen" of the plaintiff's burnt house "huddled by the stove." *Id*. at 343. The plaintiff's complaint alleged in pertinent part that the defendant "caused [the plaintiff's son's] death," and the defendant moved for summary disposition arguing, among other things, that he "owed no duty to [the plaintiff's son] or plaintiff." *Id*. at 343-344. The trial court denied the defendant's motion, but on appeal, this Court agreed with the defendant that he did not owe a duty to the plaintiff or his son. *Id*. at 347-349. Critically though, unlike this case in which plaintiff is arguing that defendants had a duty to use due care when conducting their search of plaintiff's home, the plaintiff in *Dougherty* was attempting "to impose an affirmative duty on firefighters to ensure the survival of individuals that are unobservable at the scene of a fire." *Id*. at 349. This Court rejected this argument because the defendant did not have a "special relationship" with either the plaintiff or his son. *Id*. See also *Downs*, 265 Mich App at 701 (holding that the chief of the fire-fighting division did not owe a common-law duty to act to the plaintiffs' benefit because there was no "special relationship" between the parties).

To the extent that defendants more broadly argue that they did not owe a duty to the decedents because defendants did not have a special relationship with the decedents, we agree with plaintiff that defendants' argument is misplaced. The existence of a "special relationship" is generally only relevant when determining whether the defendant had an affirmative duty to protect

---

[3] In the context of a products-liability case, the majority of our Supreme Court that participated in the case held that the duty "to avoid negligent conduct" "extends to persons within the foreseeable scope of the risk." *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977).

[4] We assume that, as part of their employment, all firefighters are expected to perform their job duties in a nonnegligent manner, so imposing a legal duty on firefighters to perform those same duties in a manner that is not grossly negligent strikes us as a minimal burden. That said, the parties have scarcely discussed this issue, and our conclusion is based on a limited record because discovery in this case has not yet started.

the plaintiff against harm. See *Buczkowski v McKay*, 441 Mich 96, 105, 105 n 9; 490 NW2d 330 (1992). This type of relationship typically arises "where one entrusts himself to the protection of another and relies upon that person to provide a place of safety, e.g., landlord-tenant, innkeeper-guest, common carrier-passenger." *Id*. at 105 n 9. Plaintiff's amended complaint does not allege that defendants had an affirmative duty to protect the decedents from harm but that defendants had a duty to use due care when conducting their search of the second floor of plaintiff's home. Accordingly, the lack of a special relationship between defendants and the decedents is not dispositive to whether defendants owed a duty to the decedents.

Instead, for the reasons explained, we conclude that defendants had a duty to conduct their search of the decedents' home in a manner that was not grossly negligent. Plaintiff's amended complaint alleges that defendants breached this duty, and that is sufficient to survive defendants' motion for summary disposition at this early stage in the litigation.

## VI. GROSS NEGLIGENCE

Defendants alternatively argue that, assuming that they had a duty, there is no question of fact that their conduct did not amount to gross negligence. We disagree.

For purposes of the GTLA, gross negligence is conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. MCL 691.1407(7)(a); *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). Gross negligence has been characterized as a willful disregard of substantial risks or safety precautions. *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010). Evidence of ordinary negligence or that an actor could have done more is insufficient to prove gross negligence. *Dougherty*, 340 Mich App at 350.

Whether a defendant's conduct constituted gross negligence is generally a question for the trier of fact. See *Tarlea v Crabtree*, 263 Mich App 80, 88, 94; 687 NW2d 333 (2004). But if no facts are in dispute and reasonable minds could not differ on the reasonableness of an actor's conduct, the issue can be decided by a court as a matter of law. *Jackson v Saginaw Co*, 458 Mich 141, 146; 580 NW2d 870 (1998).

In support of defendants' argument that they were not grossly negligent, defendants rely on the reports that they submitted after the fire, as well as their affidavits that they attached to their motion for summary disposition. In those affidavits, defendants each described in detail how they searched the second floor of plaintiff's home on the day of the fire. Defendants correctly note that, under MCR 2.116(G)(6), they were permitted to submit affidavits in support of their motion filed under MCR 2.116(C)(7), and that, in response to their properly supported motion, plaintiff could not "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial," *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006). Defendants contend that, because plaintiff has not submitted any admissible evidence contradicting defendants' affidavits, defendants are entitled to judgment as a matter of law.

We reject this argument because we conclude that the evidence in the record is sufficient to create a question of fact whether defendants were grossly negligent. The evidence on which

defendants rely to support that they conducted a proper search of the second floor of plaintiff's home (their postfire reports and their affidavits) is contradicted by Chief Barton's report. The chief's report reflects that he conducted an independent investigation of the fire, and as part of that investigation, he visited the site of the fire to determine whether defendants' assertions about how they conducted their search were believable. After conducting his investigation, Chief Barton concluded that defendants made "false statements" when they described their search of plaintiff's home because their reported conduct was inconsistent with the physical realities of plaintiff's home. Chief Barton further concluded that the more probable explanation for defendants' failure to find the decedents was that defendants "neglected to perform the tasks of completing a sweep of the second floor." Chief Barton's report also included a statement from the lieutenant who led the secondary search, in which the lieutenant stated that "there was no way that [defendants] entered the bedroom where the victims were found and missed them," contrary to defendants' assertions in their reports and affidavits.

This evidence was sufficient to create a question of fact whether defendants were grossly negligent when they searched the second floor of plaintiff's home. Plaintiff alleged that defendants were grossly negligent because they either searched the second floor in a grossly-negligent manner or entirely failed to search the second floor, then lied and said that they did. These allegations are supported by Chief Barton's report, particularly his finding that defendants neglected to perform a sweep of the second floor. The allegations are further supported by the fact that a second crew was able to quickly find the decedents when conducting a secondary search of the second floor, and the statement by the lieutenant who led the secondary search that defendants could not have missed the victims if they had searched the second floor as they claimed. Accordingly, while defendants presented a detailed account of their search of the second floor, including the bedroom in question, Chief Barton highlighted compelling evidence that defendants did no such thing then falsely reported that they did, which delayed the secondary search that found the decedents. On the basis of this evidence, jurors could reasonably reach different conclusions with respect to whether defendants' conduct amounted to gross negligence, so defendants are not entitled to judgment in their favor as a matter of law.

Defendants argue that this Court cannot consider Chief Barton's report or the statement by the lieutenant because they constitute inadmissible hearsay. See *Veenstra v Washtenaw Country Club*, 466 Mich 155, 163; 645 NW2d 643 (2002) ("Evidence offered in support of or in opposition to the motion can be considered only to the extent that it is substantively admissible."). We conclude that this argument does not require a different result for two reasons. First, defendants failed to object to the admissibility of Chief Barton's report below, so their hearsay argument in this Court is waived. See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008).

Second, assuming for the sake of argument that Chief Barton's report is inadmissible, we would conclude that granting summary disposition in defendants' favor would be premature because "further discovery presents a fair likelihood of uncovering factual support for [plaintiff's] position." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020) (quotation marks and citation omitted). While defendants moved for summary disposition before discovery had even started, that alone is not enough to establish that a grant of summary disposition in their favor would be premature. Rather, to establish that defendants' motion for summary disposition was premature, plaintiff needed to "identify the disputed issue for which [she] asserts discovery must be conducted and support the

issue with independent evidence." *Id*. Plaintiff has satisfied this burden—Chief Barton's report, including the lieutenant's statement, is independent evidence supporting that further discovery will uncover support for plaintiff's assertion that defendants' conduct was grossly negligent. Defendants make much of the fact that plaintiff did not submit an affidavit under MCR 2.116(H)(1) to support her assertion that further discovery will uncover additional evidence for plaintiff's position, but that rule is not the exclusive means of establishing that a motion for summary disposition is premature, and defendants' argument to that effect is unpersuasive.

For these reasons, we conclude that, on the current record, there is a question of fact whether defendants' conduct was grossly negligent or, alternatively, that further discovery presents a fair likelihood of uncovering factual support for plaintiff's argument that defendants' conduct was grossly negligent. Either way, defendants have not established that they are entitled to summary disposition at this early stage in the litigation.

## VII. PROXIMATE CAUSE

Defendants lastly argue that plaintiff failed to show that defendants' alleged gross negligence was the proximate cause of the decedents' deaths. We disagree.

Under the GTLA, a governmental employee can only be liable if their grossly-negligent conduct was "the proximate cause of the [plaintiff's] injury or damage." MCL 691.1407(2)(c). In *Robinson v City of Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000), our Supreme Court explained that "the proximate cause" as used in MCL 691.1407(2)(c) means "the one most immediate, efficient, and direct cause of the injury or damage[.]"

Resolution of this issue comes down to the standards for reviewing a motion filed under MCR 2.116(C)(7). Plaintiff's amended complaint alleges that defendants' grossly-negligent conduct was the proximate cause of her injuries and damages. This allegation must be accepted as true for purposes of defendants' motion filed under MCR 2.116(C)(7) unless the allegation is contradicted by documentary evidence. *Linden*, 308 Mich App at 92. Defendants have not submitted any documentary evidence rebutting the allegation in plaintiff's amended complaint; defendants merely note the circumstances surrounding the decedents' deaths and claim that plaintiff's allegation that defendants were the proximate cause of the decedents' death "is speculation." It is not speculation at this point, however, because we must accept the allegation in plaintiff's amended complaint as true unless it is contradicted by documentary evidence. Because plaintiff's amended complaint alleges that defendants were the proximate cause of plaintiff's injuries and damages, and because defendants have failed to submit evidence rebutting this allegation, defendants are not entitled to summary disposition under MCR 2.116(C)(7) at this time.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

-10-